[No. 4246.]

MILLER v. HAMLEY ET AL.

**Mining Claims—Abandonment—Application for Patent for Part of Claim.**

Where the locator of a lode mining claim, part of which was in conflict with a prior placer claim, applied for and obtained a patent to that part of his claim outside the placer he did not thereby abandon that part of his claim in conflict with the placer and excluded from his patent so as to open the same to relocation.

*Appeal from the District Court of Clear Creek County.*

Messrs. MORRISON & DESOTO and Messrs. BULLIS & WILLIAMS, for appellant.

Mr. C. C. POST, Mr. EDWARD C. MASON and Mr. HUGH BUTLER, for appellees.

Mr. JUSTICE STEELE delivered the opinion of the court.

This is a suit in ejectment in support of an

adverse claim against the application for a patent to the J. A. M. lode. The Quito claim was located on July 29, 1886, 1,354 feet in length. In 1887 the owner of the claim applied for patent to 1,019 feet of the claim, and in 1890 patent was issued for that portion of the claim. Prior to the time the application to purchase the Quito was made, patent had issued for the Becker placer, and the patented portion of the Quito lies wholly outside the Becker placer. The J. A. M. lode was located across the Becker placer, including that portion of the Quito which was excluded from the application to purchase. The owners of the Becker placer do not contest the claims of either the Quito or the J. A. M. owners, and it is conceded that the lode in controversy was known to exist at the time of the placer application for patent. The controversy arises over the right to the east 335 feet of the Quito lode, or that portion of the Quito lode not included in the application to purchase. The following stipulation was entered into: "It is stipulated and agreed by and between the parties plaintiff and defendant that the two maps offered in evidence and made by F. H. Stevens, the surveyor, are true and correct maps of the Quito lode mining claim, and the J. A. M. lode mining claim, and that the workings shown upon these maps are correct."

The following is a copy of one of these maps:

The trial resulted in judgment in favor of the plaintiffs; the court finding, among other things, "that the plaintiffs were, at the time of the commencement of this suit, and still are, the owners and entitled to the possession of the property described in the complaint, to wit, the Quito lode mining claim, as the same was located on the 29th day of July, A. D. 1886, and that the plaintiffs and their predecessors in title have ever since the year 1893 down to the present time done and performed upon said property the annual labor required by law, and that the defendant did, on the 20th day of January, 1896, unlawfully and wrongfully enter upon a portion (describing it) of the Quito claim, theretofore owned and held by plaintiffs and ousted the plaintiffs therefrom, and has ever since wrongfully withheld the same from the plaintiffs."

The defendant brings the case here by appeal.

The following appears in the brief of defendants: "Each party proved its discovery, location, record and paper title.. The annual labor was proved to have been done and the case now stands on the question raised by the third defense, to wit: "Where a lode applies for and goes to patent on that part of its area which includes its discovery shaft, is not such procedure an abandonment of that part of the original location not covered by the application and patent?"

We shall therefore confine ourselves to a discussion of this question. Cases are cited by counsel in support of their contention that the loss of the discovery is a loss of the location. No discussion of this proposition is necessary. It was settled by the case *Gwillim v. Donnelan*, 115 U. S. 45, that where the portion of a claim containing the discovery shaft is patented to a third party, the whole claim is lost. It is also well settled that the exercise of a pre-emp-

tion right under 5 U. S. Stat. 543, by an entry of one-quarter of a quarter section of land is an abandonment of the right to enter under that act the remaining three-quarters of that quarter section.—*Nix v. Allen,* 112 U. S. 129.

It was said by Judge Sanborn in the case *New Dunderberg Min. Co. v. Old,* 79 Fed. 605: "Under that act (1872), the location of a mining claim on the surface of the ground, and its entry for patent, is a notice to the government and the public that the owner claims all the exclusive rights and privileges granted by the act; but is no less a notice, and a legal notice, that he renounces and abandons to the government all other rights and privileges pertaining to his discovery of the lode for which he asks the patent." The language is quoted in the brief of counsel for defendant as supporting his contention that where one procures a patent for that portion of his claim containing the discovery shaft, he relinquishes and abandons to the government all portions of his location not included in the patent.

We do not regard the cases cited as applicable to the case at bar. In the case *Gwillim v. Donnelan,* the owner of the location was deprived of his discovery by the patent to a third person. The court held that as the discovery was not upon unappropriated public land it could not be the basis of a valid location. In the case *Nix v. Allen,* the court held that a person can exercise the right of pre-emption but once, that he loses his right by one entry, and that if he enters less than a quarter section he cannot afterward make another pre-emption entry. The language used by Judge Sanborn, when applied to the case he had under consideration, has no bearing upon the case at bar. The discoverer of a lode made a location and application for patent under the provisions of an act of congress. The judge says, in the

course of the opinion: "The claim of his grantee now is that it can renounce this location and the limitations of the law and the patent upon which it is based, and follow the lode wherever it leads, as the discoverer might have done when he first found it, and before he located his claim on the surface at all." And it was with reference to this claim of the discoverer's grantee that the language quoted was used. In our opinion the mere fact that one excludes from his application to purchase a portion of his mining claim does not in itself constitute an abandonment of the excluded portion. Some other fact must be shown from which the court can conclude that the applicant intended by his act to abandon or relinquish the remaining portion of his claim. "Abandonment is a matter of intention, and operates instanter. Where a miner gives up his claim and goes away from it without any intention of repossessing it, and regardless of what may become of it or who may appropriate it, an abandonment takes place, and the property reverts to its original status as part of the unoccupied public domain. It is then *publici juris,* and open to location by the first comer."— *Derry v. Ross et al.,* 5 Colo. 295.

The owners of the Quito did not abandon the portion of the claim not patented, because the testimony shows that they retained possession. The unpatented portion of the claim was not forfeited, because it is admitted that the annual labor was performed upon the lode within the territory in dispute. The owners of the Quito, by taking patent for that portion of the claim outside the boundaries of the Becker placer, did not by the act of excluding this territory from their application acknowledge that the placer was held by superior title, nor did such act debar them from contesting with the placer claimants, or any other person, the title to that portion of

the claim.—*Van Zandt v. Argentine Co.*, 2 McCrary 159.

We regard the decision of the secretary of the interior as decisive of this case. It was said by Mr. Secretary Teller in the case *Branagan v. Dulaney,* reported in 2 Land Decisions 744: "The right of an explorer on mineral land under the provisions of the statute is complete when he has discovered mineral and made a location. * * * Such discovery and location gives him, as before stated, all the veins, lodes, and ledges, the apex of which can be found within the side lines of such claim. His right of possession is as complete as if he had a government patent, provided he continues to put each year the required amount of labor and improvements thereon. If he does not care to continue to do the required amount of work on his lode each year, he may apply for a patent, and, having complied with the conditions prescribed by statute, he receives a government title, and is thus absolved from doing further work on his claim. The government gives the possessor of a lode his choice, to hold it without patent or to take patent. If he attempts to take a patent and finds that he is met with obstacles not anticipated, he may relinquish his attempt to secure a patent, and continue to hold by right of possession. Thus, when the applicant to enter a lode claim is met with an adverse claim, he may, if he choose so to do, avoid a legal conflict by dismissing his application for a patent, and rely on his title by possession given him by the local laws and customs, and a compliance therewith. If the adverse is for a portion only of the claim of the applicant, he may elect to take patent for the portion of his claim that is not in controversy, and he may withdraw from his application so much of his original claim as is in controversy. By such withdrawal he leaves the part of his claim claimed by

others in the condition it was before his application. He may then abandon his claim thereto, or he may litigate as to his rights with the party claiming adversely. In other words, a party owning mining property, to a part of which the title is disputed and a part is not, may, if he so chooses, make his application for so much of his property as is not in controversy; and if he makes his application and finds that his title is to be disputed as to a part, he may eliminate that portion from his application and proceed on the other."

This ruling was affirmed in 22 Land Decisions 343.

It is suggested that the decisions of the secretary of the interior are not decisions of a court, nor of a judicial tribunal. However, the decisions of Secretary Teller should have and do have great weight with this court. Moreover, as the rulings of the interior department permitted the locators of the Quito claim to take patent for a portion and hold the other portion under the possessory title, it would be manifestly unjust for the court to hold that by applying to purchase one portion they thereby abandoned and forfeited the other portion.

The judgment will therefore be affirmed.

*Affirmed.*