[No. 4524.]

CONN ET AL. v. OBERTO.

1.  **Mining Claims—Abandonment.**

Where the locator of a mining claim gives up his claim and goes away from it without any intention of repossessing it and regardless of what becomes of it or who may appropriate it, an abandonment takes place instanter, and the property reverts to its original status as part of the public domain and is open to location by the first comer.

2.  **Same—Ratification.**

Where the owners of three-fourths of a mining claim authorized a party to go upon and relocate the claim, it was an aban-

donment as to their three-fourths interest; and a subsequent statement made by the owner of the other fourth interest to one of his co-owners that he did not care to have anything further to do with the claim, constituted an abandonment on his part, and a ratification of the act of his co-owners in permitting the relocation.

3. **Mining Claims—Transfer—Abandonment—Possession.**

Where the owner of a mining claim sold part of the claim, reserving the mineral right, and the purchaser went into possession thereof, and the locator afterwards abandoned his claim and it was relocated, the relocator adopting the boundaries of the original location, the abandonment was effective as to the whole claim and terminated the rights of the purchaser of a part thereof, and the possession of such purchaser could not defeat the relocation of that part of the claim held under conveyance from the original locator.

*Appeal from the District Court of San Miguel County.*

Mr. L. C. KINIKIN, for appellants.

Messrs. HOGG & WATSON, for appellee.

Mr. JUSTICE STEELE delivered the opinion of the court.

On May 16, 1900, Alfred Smith filed in the county clerk and recorder's office of the county of San Miguel his location certificate stating that on May 15, 1900, he duly discovered and located the Jupiter lode. Smith sold a tract 150 by 100 feet within the boundaries of the claim, reserving mineral rights, and the defendants, through intermediate conveyances, became the owners of the portion sold by Smith, and at the time of the bringing of suit were in possession thereof. Smith also sold his interest in the Jupiter claim, and prior to September 11, 1901, H. M. Hogg, Joe Oberto and James Shain were the owners of the location, their interests being one-half, one-fourth and one-fourth respectively. While the property stood in the names of Hogg, Joe Oberto and Shain,

Peter Oberto was given permission by Hogg and Joe Oberto to relocate the claim. On September 11, 1901, Peter Oberto located the Hattie lode, using the discovery shaft of the Jupiter, and adopting the Jupiter stakes. On October 31, 1901, he commenced this action against the defendants, and among other things alleged that they were wrongfully and unlawfully withholding a portion of the Hattie claim from him.

The answer denies the allegations of the complaint; and, by way of cross-complaint, the defendants alleged that they, by virtue of certain deeds of conveyance, became and then were the owners and in actual possession of that portion of the claim in dispute.

The replication alleges that Alfred Smith, the locator of the Jupiter, made no discovery of mineral in place within the boundaries of the claim; and further, that the claim was abandoned by the owners thereof prior to the location of the Hattie.

The verdict was in favor of the plaintiff, and the defendants appealed.

Mr. Hogg testified, in part, as follows: ''I do not remember just when, but I know that some time prior to the 11th of September there was some talk of doing considerable work on the claim, and I didn't care to bother with it any more, and I told Oberto that I wouldn't have anything more to do with it. Some days after that he and his brother Pete came to my office. At that time Joe Oberto and myself owned all the property so far as the records appear and so far as I know, and he says he didn't care to have anything more to do with it, and he wanted to know if his brother Pete might locate it. Shain, I remember, also had a quarter interest at that time, and I said, so far as I was concerned I had no objection, and Pete was told to go ahead; and I saw Shain afterwards, and he said he did not care to have anything to do with it.

I know that about the latter part of August or the first of September we had abandoned the property.''

Exceptions were taken to the giving of certain instructions and the refusal to give others, but the appellants rely mainly upon the propositions: First. That there was no abandonment of the Jupiter claim at the time of the location of the Hattie; second, that they being in possession of a portion of the Jupiter claim under a color of right, no valid right could be initiated by Oberto; and, third, that under section 2019, Mills' Annotated Statutes, the abandonment should have been evidenced by writing.

It was held in *Derry v. Ross et al.,* 5 Colo. 295, and approved in the recent case *Miller v. Hamley et al.,* 31 Colo. 495, that abandonment is a matter of intention, and operates instanter. When a miner gives up his claim and goes away from it without any intention of repossessing it, and regardless of what may become of it or who may appropriate it, an abandonment takes place, and the property reverts to its original status as a part of the unoccupied public domain. It is then *publici juris,* and open to location by the first comer. The action of Hogg and Oberto, the owners of three-fourths of the Jupiter, in granting permission to Peter Oberto to enter into possession of the Jupiter and locate the Hattie thereon, was an abandonment, on their part, of the Jupiter claim; but such action did not deprive Shain, the owner of the remaining portion, of his interest in the Jupiter. Shain, however, is not before us asserting an interest in the Jupiter, and the testimony shows that he subsequently declared to Mr. Hogg that he did not care to have anything more to do with the Jupiter claim. This statement, under the circumstances, must be regarded as an abandonment by him of his interest in the claim and as a ratification of

the act of his co-partners in permitting Oberto to locate the Hattie.

The argument advanced by appellants, that, as they were in possession of a portion of the claim under color of title, the territory was not open to location under the mineral laws, is not sound. The possession of the appellants under a conveyance from the original locator of the claim could not ripen into a perfect title unless the original locator secured title from the government. Theirs was only a right of possession during the time the locator, or those to whom he had sold with notice, remained in possession by virtue of the rights conferred upon locators of mining claims under the law, and their title would ripen into a perfect title whenever patent issued; but when the locator of the mining claim abandoned it, all the land embraced within the original location became public land and open to entry, and the right of the grantees of the locator to occupy a portion of the land terminated. The terms "unoccupied" and "unappropriated" refer to land that is not in the possession of one who claims the right of possession by virtue of a compliance with the law, and land in the possession of one who has made a valid discovery and location is not subject to location by another until after abandonment or forfeiture. But appellants did not claim to be in possession of the land by virtue of their compliance with the mining law, but by virtue of a conveyance from one who had perhaps made a valid discovery and location, but had sold the location, and those to whom he had sold had abandoned the claim. Section 2019, Mills' Annotated Statutes, has no application to this contract.

We are of opinion, therefore, that there was an abandonment of the Jupiter claim by the owners

thereof, and that the location of the Hattie was made upon unoccupied and unappropriated land.

The judgment is affirmed.

·Affirmed.