[No. 4445.]

GURNEY V. BROWN.

[No. 4449.]

SMALL V. BROWN.

1. **Appellate Practice—Facts Assumed on Trial.**
Facts assumed to be true on the trial of a cause cannot after-

wards be contested on appeal.  Questions sought to be reviewed must first be brought before the trial court for decision.

2. **Mines and Mining—Conflicting Lode and Placer Claims— Known Veins—Judgment.**

Where a lode mining claim was located across a patented placer claim, a judgment of the land department holding that the lode in controversy was not known at the time the placer claimant applied for patent is not equivalent to a judgment that the lode does not cross the placer.

3. **Public Lands — Land Department — Judgments — Collateral Attack.**

The judgment of the land department respecting matters which it must determine in ascertaining whether or not a claimant is entitled to a patent from the United States to a part of the public lands cannot be collaterally attacked.

4. **Mining Claims—Reversion to Public Domain—Relocation.**

A lode mining claim was located across a patented placer claim so that the lode claim was severed in two tracts.  On application for patent the land department refused to issue patent for the entire claim because it was in two separate tracts, but authorized the claimant to elect upon which tract he would accept a patent and directed that in case of failure to make an election or to appeal from the ruling of the land office within sixty days, the entry should be canceled as to the south tract. The claimant made no election but filed a contest against the placer claimant.  The land department took no affirmative action to cancel the entry, and about three years thereafter decided the contest between the lode and placer claims in favor of the placer. The lode claimant thereupon filed in the land office his election to accept a patent to the north tract and waived any further right to question or appeal from the ruling of the land office, and about a month thereafter the land department canceled the entry of the south tract.  Three relocations were made upon the .south tract: one after the ruling of the land office on the contest between the lode and placer claims, but prior to the filing by the lode claimant of his election to accept patent to the north tract; one after the filing of said election, but prior to the cancellation of the entry by the land office; and one after the cancellation.  Held, that the south tract reverted to and became part of the public domain and subject to relocation upon the filing by the original locator of his election to take the north tract, and the second relocation was the only valid location.

5. **Mining Claims—Suspension of Entry—Certificate of Entry— Evidence.**

The suspension of a mineral entry for the purpose of requiring compliance with regulations of the land department does not destroy the force of the certificate evidencing such entry, or enable third parties to attack its validity.

6. **Mining Claims—Suspension of Entry—Cancellation—Judgments.**

Where, on application for patent to a mining claim, the land department refused to issue the patent because the claim was severed into two separate tracts by a patented placer claim, but authorized the claimant to elect which one of the two tracts he would accept patent for, and directed that in case of his failure to elect within sixty days, the entry would be canceled as to one of the tracts, a failure to appeal from such ruling of the land office did not operate to cancel the entry to the tract designated as subject to cancellation, in the absence of an election of one of the tracts by the claimant or an affirmative cancellation by the land department.

7. **Mining Claims—Locations—Amendments.**

Where a location of a mining claim was made upon ground not subject to location, and after the land on which the location was made had reverted to and become part of the public domain and subject to location, a second location was filed thereon, a subsequent amendment of the first location could not operate to validate such location.

*Appeals from the District Court of Teller County.*

Mr. J. C. HELM and Mr. CHAS. C. BUTLER, for appellant Gurney.

Mr. JOHN KNOWLES and Mr. CHAS. RAND, for appellant Small.

Messrs. POTTER & McCARTHY, for appellee.

CHIEF JUSTICE GABBERT delivered the opinion of the court.

The main question presented for determination in both of these causes is the same, and the mining premises in controversy embraces practically the

same tract. For these reasons the two cases will be disposed of in one opinion.

Appellee Brown applied for patent on a mining claim known as the Scorpion. Appellant Gurney adversed this application as the owner and claimant of the Hobson's Choice, and the appellant Small as the owner and claimant of the P. G. Thereafter each brought suit in support of his adverse claim. The causes were tried on an agreed statement of facts, whereby the main question presented is, When, with respect to the three locations, did the premises in controversy become subject to location? The following diagram will aid in understanding this question:

The facts presenting it are as follows:

From this diagram it will be observed that the Kohnyo was segregated into two disconnected tracts by the Mt. Rosa, a patented placer claim. The north

end of the Kohnyo, approximately 500 feet in length, embraced the discovery shaft. The south end was some 700 feet in length, and was without development work of any kind. The local land office permitted the claimant of the Kohnyo to enter the two tracts as one claim, but the land department ultimately refused to issue a patent for such tracts, basing such refusal upon the ground that two disconnected portions of a lode mining claim separated by a patented placer could not be included under one location, within the same patent. The land office, however, gave the applicant the privilege of proceeding. to patent upon either of the segregated tracts, and directed that in default of an election or appeal by the claimant within sixty days from the date of the order, that the entry of that portion of the claim lying south of the Mt. Rosa placer should be canceled without further notice. This decision was rendered May 28, 1895. No appeal was taken from this decision, but the claimant of the Kohnyo instituted proceedings against the claimants of the Mt. Rosa placer, the purpose of which was to secure title to the vein of the Kohnyo, which, it was claimed, passed through the portion of the placer conflicting with the Kohnyo location. These proceedings were prosecuted before the land department, with the result that on May 7, 1898, a decision was rendered against the Kohnyo claimants'. contention of a known vein in the placer conflict. June 14, 1898, the claimant of the Kohnyo filed in the local land office a written instrument, whereby election was made to retain and patent the north end of the Kohnyo claim, and in which the right to further question or review the decision of the land department of May 7, 1898, was waived. July 15, 1898, the commissioner of the general land office canceled the entry of the Kohnyo claim as to that portion south of the Mt. Rosa placer. May 13, 1898, appellee

Brown located this 700 feet as the Scorpion lode claim. June 23, 1898, appellant Gurney located the same premises as the Hobson's Choice lode, and July 16, 1898, appellant Small located the same ground as the P. G. lode claim. July 15 and 16, 1898, the claimant of the Scorpion filed amended and second amended location certificates. On these facts judgment was rendered for defendant in each case, from which the plaintiffs appeal.

Other facts were stipulated, which have not been summarized because they are of that character, and cover such questions, that the rights of the respective claimants to the premises in controversy are wholly dependent upon the legal conclusions deducible from those stated. Counsel for appellee, however, contend that the judgment must be affirmed because the agreed facts fail to identify the premises in dispute as part of the Kohnyo claim; do not establish the validity of that location, nor affirmatively show that the premises, when located as the Scorpion, were not part of the unappropriated public domain. The agreed statement will not bear this construction. It is evident from the record and the briefs of counsel that the only question submitted for trial, and the only one which the parties intended to litigate and have determined by the trial court, was the time when the premises in controversy reverted to the public domain, and the judgment respecting their rights which would follow the conclusion of law on this question. Or, in other words, the only question really submitted for trial was the point of time at which the premises in controversy were open to location. Upon the determination of this question the decision as to which of the respective locations was valid, depended. This is apparent from the agreed statement of facts, for thereby it was conceded that each of the parties litigant had complied with all the requirements of the

law in the location of their respective claims, as set forth in their respective pleadings, saving and excepting it was not admitted that at the time of the respective locations the ground in controversy was subject to location. As to each claim this question was reserved for the decision of the trial court by the following proviso: *"Provided,* however, that it is not admitted that at the time of said location the ground embraced in said location was a part of the vacant and unappropriated public domain."

Counsel for appellee concede that the tract in controversy is substantially identical with the south tract of the Kohnyo lode, but say that such fact is not disclosed by the record. If not, it is rather strange that in the preparation of the agreed statement the various steps affecting the Kohnyo location were set out with such particularity. A discussion of the main question in the cases will demonstrate that the stipulated facts do establish the validity of the Kohnyo location, and that at the date of the location of the Scorpion the premises therein included were not a part of the unappropriated public domain. Appellee, however, is estopped from raising any of these questions now. His counsel state in their brief:

"Upon the trial in the court below the stipulation of facts was not read by either party. * * * It was upon taking up the record before this court for the preparation of appellee's brief that the question of the relevancy of the exhibits attached to the stipulation of facts first presented itself, * * *. From an examination of the record it would appear to be a certainty that the case was tried in the lower court upon assumptions which are wholly unsupported by the written evidence contained in the agreed statement of facts. * * * The truth of the matter is, that after the preparation, execution and filing of the agreed facts, the stipulation contain-

ing such facts was never again read or digested by any of the parties in interest. The trial court and counsel for all the parties litigant assumed that the stipulation covered facts which, upon investigation, we fail to find.''

Facts assumed to be true on the trial of a cause cannot afterwards be contested on appeal.—2 Cyc. 675. In short, it appears that counsel for both sides, on the trial of the cause, construed the stipulated facts as covering these questions, and on appeal they will be held to that construction. Again, none of these questions were raised in the court below. Had they been, and the attention of the court and counsel been called to the fact that the agreed statement omitted material facts, opportunity would have been afforded to correct the alleged omissions either by further stipulation or testimony. One of the cardinal principles of appellate procedure is, that questions sought to be reviewed shall first be brought before the trial court for decision. Otherwise a court of review would often be compelled to decide purely original questions which the trial court was given no opportunity to decide or determine.—Elliott's Appellate Procedure, § 489.

We shall next notice the contention of counsel for appellee, that the premises in controversy were not segregated by the Kohnyo location. In support of this claim, two propositions are relied upon: (1) The decision of the land department of May 7, 1898, to the effect that the Kohnyo vein was not known to exist within the boundaries of the Mt. Rosa placer at the time application for the patent therefor was made; and (2) that the rights of the Kohnyo claimant terminated at the point where the north end of the Kohnyo claim intersected the exterior boundaries of the Mt. Rosa placer. The first proposition is clearly untenable. The proceedings before the land depart-

ment with respect to the Kohnyo vein passing through the conflicting patented placer were for the purpose of determining whether or not such vein was known to exist at the time patent for the placer was applied for. On the evidence submitted, the department held that it was not known when the claimants of the Mt. Rosa applied for a patent, and therefore could not be held by the Kohnyo lode. This is radically different from a judgment to the effect that the vein did not pass through the conflicting placer location. The second proposition is equally untenable. The land department is a special tribunal created for the purpose of supervising the various proceedings whereby title from the government to portions of the public domain may be obtained. Its judgment respecting those matters which it must determine in ascertaining whether or not an applicant is entitled to acquire the fee title or patent from the United States is unassailable, except by direct proceedings. In other words, its judgment respecting these matters cannot be attacked collaterally.—*Steele v. Smelting Co.,* 106 U. S. 447; *Smelting Co. v. Kemp,* 104 U. S. 636.

In this instance the land department had determined that the applicant for patent on the Kohnyo was entitled to a conveyance of one or the other of the two tracts. Whether or not this conclusion was right or wrong cannot be questioned collaterally. If wrong, it was an error which the land department committed in the exercise of its jurisdiction over those matters specially intrusted to its supervision and control, and hence, could only be corrected in a direct proceeding instituted for that purpose.

This brings us to a discussion and determination of what we have designated as the main question, namely: At what date, with respect to the three

locations now asserting rights to the premises in dispute, did such premises become subject to location?

No case is cited by counsel where the propositions presented by the facts narrated and bearing upon this question have been determined, and we must, therefore, analyze the facts and their effect for the purpose of ascertaining when, according to those facts, the subject-matter of the actions reverted to the public domain. This is the important point, because a location of a mining claim can only be made upon unappropriated mineral land.—*Armstrong v. Lower*, 6 Colo. 393. The decision of May 28, 1895, did not cancel the entry made by the applicant for patent on the Kohnyo. Thereby the Kohnyo claimant was given the right to elect which of the two tracts would be selected for patent. In case of failure to make such election, the government reserved the right to cancel the entry on the south tract. The judgment of the land department was to be enforced in one of two ways, whereby one or the other of the tracts would be restored to the public domain, namely: By the election of the Kohnyo claimant, or the affirmative action of the department. The proceedings instituted by the Kohnyo claimant for the purpose of establishing the existence of a known vein through the Mt. Rosa placer at the time the patent for the latter was applied for cut no figure, for, independent of those proceedings, the fact remains that the judgment of the land department of May 28, 1895, was not enforced or given effect until the Kohnyo claimant, by its written declaration filed in the local land office, indicated its intention to proceed to patent on the north tract. This act on the part of the Kohnyo claimant was an express surrender of all rights to the south tract. It operated as an abandonment of any right thereto, and took effect the very moment the declaration of election was filed in the local land

office.—*Derry v. Ross,* 5 Colo. 295. Up to that time, the land department having taken no affirmative action to cancel the Kohnyo entry on the south tract, the claimant might have selected that instead of the north one. Certainly, had such election been made, it could not be successfully claimed on the record before us, that the Scorpion could have established any rights against such selection. This conclusion is inevitable, because, so long as the Kohnyo claimant had rights in the south tract, it was not subject to location by third parties. If, then, this tract could not be located as against the rights of the Kohnyo claimant, an attempted location during the existence of such rights could be of no force or effect, because made at a time when it was not subject to location. The subsequent formal cancellation of the entry on the south tract by the action of the land department could add nothing to that which had already taken place by the action of the Kohnyo claimant in surrendering and abandoning all rights to the south tract. Such action on the part of the department only evidenced in another form the fact that the Kohnyo claimant had surrendered title to this tract so far as evidenced by the receiver's receipt, and that all rights thereunder were formally canceled so far as the government was concerned. This action, however, was not necessary in order to restore the south tract to the public domain; because, by the judgment of the land department, that occurred the moment the Kohnyo claimant complied with that judgment. The action of the department in formally canceling the entry of the south tract of the Kohnyo claim is only important in view of the fact that counsel for appellee contend that the judgment of May 28, 1895, was self-executing, and that it did not appear from the agreed statement that the Kohnyo entry had not been canceled in accordance with that judgment (or another, which

we have not noticed because we do not deem it material) at the time of the Scorpion location. The land department certainly did not treat the judgment of May 28, 1895, as self-executing, because the commissioner expressly stated, under date of July 15, 1898, that "it now devolves upon this office to execute the same." This action also establishes the fact that, so far as any affirmative act of the government was concerned, the south tract of the Kohnyo entry was not canceled until the last-mentioned date. It is, therefore, apparent that the contention of counsel for appellee, that the statement of facts does not establish the validity of the Kohnyo location, nor affirmatively show that on the date of the Scorpion location the premises so claimed were not subject to location, is not tenable, because the premises did not revert to the public domain until the Kohnyo claimant filed its election in the local land office, and up to that time the entry of the south tract of the Kohnyo had not been vacated by any affirmative act on the part of the land department. We must, therefore, conclude that the premises in controversy were not subject to location until after the date when the Kohnyo claimant filed in the local land office its election to patent the north tract. This being the conclusion, a brief summary of the facts will indicate which of the three claims constitutes a valid location of the south tract. The election of the Kohnyo claimant was filed in the local land office June 14, 1898. The Scorpion was attempted to be located May 13, 1898. June 23, 1898, the Hobson's Choice lode was located, and July 16 following the P. G. was located. It thus appears that the Scorpion was attempted to be located at a time when the premises were not subject to location; that the Hobson's Choice lode was located when they had reverted to the public domain, and that the location

of the P. G. was made after that date; so that the only valid location was the Hobson's Choice.

Counsel for appellee have argued that the suspension of a receiver's receipt operates to render it incompetent as evidence of the validity of the claim upon which it is issued. This proposition may be correct, but the facts do not justify its application. The certificate on the Kohnyo was not suspended or canceled, but the order of the department was to the effect that the entry itself should be suspended until certain directions were complied with. The mere suspension of a mineral entry for the purpose of requiring compliance with departmental regulations does not destroy the force of the certificate evidencing such entry, or enable third parties to attack its validity:—§ 772, 2 Lindley on Mines; *Last Chance M. Co. v. Tyler M. Co.,* 61 Fed. 557. Counsel for appellee, as we understand their brief, have also advanced the proposition that the judgment of the land department of May 28, 1895, not having been appealed from, operated to cancel the entry at the expiration of the date when the time allowed for appeal expired. We think this contention has already been answered, but the authorities they cite to support their claim are not in point. In *U. S. v. Steenerson,* 50 Fed. 504, as well as in *Murray v. Polglase,* 43 Pac. (Mon.) 505, it was held that, according to the judgment of the land department, the respective entries had been canceled; and so in the cases of *Reed,* 6 L. D. 563; *Gauger,* 10 L. D. 221, and *Perrott v. Connick,* 13 L. D. 598. As we have already shown, a judgment of absolute cancellation is entirely different from one where the entry is merely suspended for the purpose of enabling the applicant to comply with some specific requirement.

But one further matter requires notice, namely:

The filing on the part of the Scorpion claimant of amended and second amended location certificates July 15 and 16, 1898, or, as it is claimed on behalf of his counsel, he made amended locations of his claim on these dates. These acts in no manner changed or enlarged his rights, for prior thereto, the premises had been claimed and located as the Hobson's Choice, at a time when the premises thereby included were open to location.

As these cases were tried in the court below on an agreed statement of facts, which definitely determines the rights of the respective parties, judgments in each case will be directed here under the authority of section 398 of the Civil Code. The judgment in *Small v. Brown* is vacated, and judgment will be entered in this court that neither party has established any right to the premises in controversy, and that each pay his own costs in this court as well as in the court below. In *Gurney v. Brown* it appears from the facts stipulated (considering those not specially noticed in the opinion), that the location of the Hobson's Choice is in all respects regular; that appellant Gurney is the owner of, and has established his right to the possession and occupancy of the premises embraced in such location, and is entitled to recover the same from the appellee by virtue of a full compliance with the statutes of the United States and the state of Colorado in the discovery and location of the Hobson's Choice lode mining claim. Wherefore, judgment is now here directed to be entered in this court that he do recover the premises included in the Hobson's Choice location of and from the appellee Brown, and that he also recover his costs in this court, as well as in the court below.

> *Judgments vacated and judgments entered in this court.*