[No. 2505.]

THE PEORIA AND COLORADO MILLING AND MINING COMPANY V. TURNER.

1.  Mining Claims—Rights of Locator.

By virtue of section 2322, U. S. Rev. Stats., the locator of a mining claim segregates the land located from the public mineral domain of the government, and the grant confers upon him the exclusive right of possession and enjoyment of the surface and any lodes or veins the top or apex of which is within the exterior boundaries of the claim, and so long as such locator complies with the requirements of the act he can protect his right to such exclusive possession from invasion by any subsequent locator.

2.  Mining Claims—Location—Trespass.

An attempt to make a location of a mining claim upon territory that is, at the time, embraced within a prior subsisting and valid location is void. The prospector who goes upon such a subsisting location for the purpose of making his discovery is guilty of a trespass, and every subsequent act by him in attempting to perfect a location is an additional trespass.

3.  Mining Claims—Segregated Claim—Cancellation of Entry.

Where a mining claim was segregated into two tracts by a patented claim crossing it, and upon application for patent the land department held the entry for cancellation as to one of the tracts, and the locators attempted to avoid the effect of the ruling of the land department by disclosing the existence of their discovery vein throughout the entire length of that portion of the claim held for cancellation, and, failing in this, they abandoned their application for patent and elected to rely upon their grant from the government under their location and complied with all the requirements of the law as to annual assessment work, their action negatived an intention upon their part to

abandon or surrender that part of their claim held for cancellation, and it was not subject to relocation.

**4. Mining Claims—Cancellation of Entry.**

The cancellation of a mineral entry and application for patent does not operate to restore the land to the public domain and render it subject to relocation, but simply checks or terminates the proceedings for patent.

**5. Mining Claims—Cancellation of Receiver's Receipt.**

The cancellation of a receiver's receipt does not of itself evidence either a forfeiture or relinquishment of the location or claim by the applicant for a patent and has no necessary connection either with the segregation of the land from the public domain or its restoration thereto.

*Error to the District Court of Clear Creek County.*

Mr. WALTER M. KEENAN and Mr. H. McGARRY, for plaintiff in error.

Messrs. BULLIS & WILLIAMS, for defendant in error.

MAXWELL, J.

Action in ejectment by defendant in error (plaintiff below) against plaintiff in error, to recover possession of a portion of the Niagara lode mining claim, Clear Creek county, Colorado.

The case was submitted to the trial judge without a jury, upon an agreed statement of facts, attached to which were certain exhibits, a portion of which exhibits set forth decisions of the commissioner of the general land office and the secretary of the interior, rendered in proceedings to obtain a United States patent for said Niagara lode claim.

The stipulation provided that objections as to the relevancy and materiality of these exhibits might be made at the trial.

Exhibit "A" was a plat which it was agreed correctly represented the relative locations of the

claims in controversy and the mill sites indicated
thereon, which plat is here shown.

*EXHIBIT "A"*

Passing by, for the present, the exceptions taken
to the rulings of the court on the rejection of the
decisions of the commissioner of the general land
office and the secretary of the interior, the material
facts in the case may be stated as follows:

January 6, 1880, the Niagara lode claim was
located by the grantors of defendant in error.

January 10, 1891, and November 20, 1891, pat-
ents were issued for the Kunegunde and Rochester
mill sites respectively, for the areas shown upon the
plat, without objection upon the part of the owners
of the Niagara.

October 26, 1893, application for a patent for
the Niagara was filed in the local land office by the
then owners of the claim.

February 7, 1897, plaintiff in error's grantors
located the Sherman P. lode claim, embracing the
territory shown by the shaded portion of the plat,
the discovery shaft of which was within the exterior

boundaries of the Niagara, at the point indicated upon the plat.

April 22, 1897, entry of the Niagara for patent was made in the local land office, and receiver's receipt issued thereon.

August 23, 1897, the commissioner of the general land office held the entry for cancellation and the application for patent for rejection, "to the extent of that portion lying easterly of line 4-5 of the Rochester mill site."

October 23, 1897, on a motion for review, the commissioner of the general land office affirmed the foregoing decision.

February 28, 1899, the secretary of the interior affirmed the decision of the commissioner of October 23, 1897.

June 14, 1897, the commissioner finally cancelled the entry "as to all that portion of the Niagara lying east of line 4-5 of the Rochester mill site."

It is agreed that the Niagara lode claim was duly located upon the unappropriated public domain January 6, 1880; that during 1895 a trench was dug along the entire length of that portion of the Niagara claim lying easterly of the Kunegunde mill site disclosing therein a vein, claimed by defendant in error to be the Niagara vein, and that such vein passes through the easterly end line of the Niagara lode claim as located; that during 1896 the owners of the Niagara lode claim performed the annual assessment on that portion of the claim lying westerly of the Rochester mill site, and for the years 1897 and 1898, $100.00 worth of work was done upon both ends of the Niagara claim; that defendant in error claims the ground in controversy by virtue of the location of the Niagara lode and a full compliance upon her part, and upon the part of her grantors, with the laws relating to the discovery, location and possession of lode

mining claims and not by virtue of the receiver's receipt issued, the application for patent having been abandoned. It is also agreed that the grantor of plaintiff in error, February 6, 1897, located the shaded portion of the plat as the Sherman P. lode by sinking a discovery shaft thereon at the point indicated on the plat, and April 12, 1897, filed a location certificate thereof, claiming that at that time the same was unappropriated public domain.

At the trial plaintiff in error offered in evidence the decisions of the commissioner of the general land office and the secretary of the interior above referred to, which were excluded upon objection of defendant in error, whereupon the court found the issues in favor of defendant in error, and judgment was rendered in her favor for the ground in controversy, to review which is this writ of error.

It is contended by plaintiff in error:

First, that the owners of the Niagara claim surrendered to the public domain that portion of it lying easterly of the Kunegunde mill site, by acquiescing in the entry and patenting of the mill sites, which segregated into two non-contiguous portions, the lode claim; and,

Second, that the officers of the land department determined that such segregated portion ceased to be a part of the Niagara claim when the mill sites were patented, and that the subsequent entry of the Niagara, as to that portion, was void.

It will be borne in mind that this is an action in ejectment, wherein the plaintiff relies solely upon the title derived through and by virtue of a prior, subsisting and valid mining location and in no wise relies upon proceedings in the land office for the acquisition of a patent title, or upon the receiver's receipt hereinbefore referred to.

By virtue of U. S. Rev. Stats., sec. 2322, the

locator. of. a mining location segregates from the public mineral domain of the government the land located, and the grant confers upon him the exclusive right of possession and enjoyment of the surface, and any lodes or veins, the top or apex of which is within its exterior boundaries, and so long as such locator complies with the requirements of the act, he can protect his right to the exclusive possession of the surface of his claim, as well as such lodes or veins, from invasion, by any subsequent locator.

In *Beck v. Meagher,* 104 U. S. 279-284, it is said:

"Mining claims are not open to relocation until the rights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has in law abandoned his claim, and left the property open for another to take up. The right of location upon the mineral lands of the United States is a privilege granted by congress, but it can only be exercised within the limits prescribed by the grant. A location can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done."

And, again, in *Gwillim v. Donellan,* 115 U. S. 45-49:

"A valid and subsisting location of mineral lands, made and kept in accordance with the provisions of the statutes of the United States, has the effect of a grant by the United States of the right of present and exclusive possession of the lands located. If, when one enters on land to make a location there is another location in full force, which entitles its

owner to the exclusive possession of the land, the first location operates as a bar to the second.''

In *Del Monte M. & M. Co. v. Last Chance M. & M. Co.,* 171 U. S. 55-78, after quoting the above, Mr. Justice Brewer, commenting thereon, said:

''The question presented in each of those cases was whether a second location is effectual to appropriate territory covered by a prior subsisting and valid location, and it was held it is not. Of the correctness of those decisions there can be no doubt. A valid location appropriates the surface and the rights given by such location cannot, so long as it remains in force, be disturbed by any acts of third parties.''

Such has been the doctrine of the courts of this state since *Armstrong v. Lower,* 6 Colo. 393.

Authorities to the foregoing effect might be indefinitely multiplied. The attempt to make a location upon territory that is, at the time, embraced within a prior, subsisting and valid location is void. The prospector is guilty of a trespass; even when he goes upon such a subsisting location for the purpose of making his discovery and every subsequent act by him in attempting to perfect a location is an additional trespass.

This brings us to a discussion and determination of the question presented by the first proposition contended for by plaintiff in error, to wit: that the owners of the Niagara claim surrendered to the public domain that portion of it lying easterly of the Kunegunde mill site, by acquiescing in the entry and patenting of the mill sites.

In this connection *surrender* and *abandonment* are synonymous.

There is no question of statutory forfeiture in this case.

It is a settled principle of law that an abandon-

ment of property is a question of intent.—*Omar v. Soper,* 11 Colo. 380-390; *Miller v. Hamley,* 31 Colo. 495-500.

The question being one purely of intent, the fact is to be determined by the acts and conduct of the party.

The acts and conduct of the owners of the Niagara claim negative any idea of an intention upon their part to abandon or surrender that portion of their claim in controversy herein.

After the ruling of the commissioner of the general land office of August 23, 1897, holding for cancellation that portion of their entry lying easterly of line 4-5 of the Rochester mill site, they attempted to avoid the force and effect of that ruling, by disclosing the existence of the Niagara vein throughout the entire length of that portion of the claim held for cancellation, and failing in this, they abandoned their application for patent, and elected to rely solely upon their grant from the government under their location, and at the date of the commencement of this suit had complied with all the requirements of the law as to annual labor, and for several years immediately preceding the attempted location of the Sherman P. performed $100.00 worth of work upon that portion of the claim lying east of the Kunegunde mill site.

. Under the facts of this case, so far as their intention controls, the extreme measure of the loss sustained by them in allowing the two mill sites to go to patent without adverse proceedings was that portion of their claim lying within the exterior boundaries of the mill sites. Therefore, upon the agreed facts, we must conclude that plaintiff in error's first position is not well taken.

As to the second position relied upon, that the officers of the land department decided that such seg-

regated portion of the Niagara claim ceased to be a portion of such claim when the mill sites were patented, we may say that the officers of the land department did not so decide. They simply held *the entry for cancellation and the application for rejection.*

This brings us to a discussion and determination of the force and effect of an order of cancellation of a mineral entry, such as this record presents, made by the officers of the land department.

The cancellation of a mineral application and entry for patent does not of itself operate to restore the land to the public domain and render it subject to relocation; it does not divest the patent claimant's title; it simply checks or terminates the patent proceedings.

The cancellation of the entry—of the receiver's receipt—is, like its issuance, a mere incident in the proceedings prescribed for procuring title from the government; although the receiver's receipt, while it remains in force, is evidence of compliance with preliminary patent conditions, yet its revocation, and nothing more, of itself does not evidence either a forfeiture or relinquishment of the location or claim by the applicant; it has no necessary connection either with the segregation of the land from the public domain or its restoration thereto.

"Such cancellation (of the receiver's receipt) would not of itself render the ground subject to relocation. The applicant would simply be relegated to such possessory rights as he had prior to the initiation of patent proceedings and such as he may have subsequently acquired."—Lindley, § 772.

"The fact that the entry was cancelled will not of itself render the ground subject to relocation. The original location is not affected thereby."—Barringer & Adams, 316.

In *Branagan v. Dulaney,* 2 L. D. 744, the sec-

retary of the interior, speaking of the rights of a locator of a mining claim, says:

"The government gives the possessor of a lode his choice, to hold it without a patent, or to take patent. If he attempts to take a patent and finds that he is met with obstacles not anticipated, he may relinquish his attempt to secure a patent, and continue to hold by right of possession. Thus, when the applicant to enter a lode claim is met with an adverse claim, he may, if he choose so to do, avoid a legal conflict by dismissing his application for patent, and rely on his title by possession given him by the local laws and customs, and a compliance therewith."

In the case of The Clipper Mining Co., reported in 22 L. D. 527, the secretary of the interior said:

"The judgment of the department in the Searl Placer case went only to the extent of rejecting the application for patent. The department did not assume to declare the location of the placer void, as contended by counsel, nor did the judgment affect the possessory rights of the contestant to it."

In the case of *McGowan et al. v. Alps Mining Co.*, 23 L. D. 113, the secretary of the interior, in speaking of the effect of a cancellation of a mineral entry, said:

"The fact that the entry was cancelled would not, of itself, render the ground subject to relocation. The original location of the lode was not affected by the cancellation, even though it had been regular, and the owner could still hold it under its possessory right, so long as there was a compliance with the requirements of the law."

In *Beals v. Cone et al,* 27 Colo. 473-483, Justice Gabbert, commenting upon the above, said:

"The fair inference from these rulings is, that the judgment of the department, rejecting an application for patent and nothing more, leaves the appli-

cant with the same rights as though no application had ever been made.''

Our conclusions are, that that portion of the Niagara claim lying easterly of the Kunegunde mill site was not, upon the date of the attempted location of the Sherman P. claim, by act of the owners of the Niagara claim, by operation of law, or by the decision of the officers of the land department, a part of the unappropriated mineral domain of the United States, and that, therefore, the attempted location of the Sherman P. claim was void.

Plaintiff in error cites *Gurney v. Brown,* 32 Colo. 472, 77 Pac. 357.

The facts in the Gurney-Brown case are so unlike the facts in the case under consideration as to make that authority inapplicable. In fact, · neither of the points ruled herein were before the court in that case.

To point out here the dissimilarity in the facts of that case and this case can accomplish no beneficial result, and would unnecessarily prolong ˙this opinion.

There being no error in the rulings or judgment of the court below, the judgment will be affirmed.

<em>Affirmed.</em>