Maxwell, J.
- Action in ejectment by defendant in error (plaintiff below) against plaintiff in error, to recover possession of a portion of tbe Niagara lode mining claim, Clear Creek county, Colorado.
The case was submitted to the trial judge without a jury, upon an agreed statement of facts, attached to which were certain exhibits, a portion of which exhibits set forth decisions of ihe commissioner of the general land office and the secretary of the interior, rendered in proceedings to obtain a United States patent for said Niagara lode claim.
The stipulation provided that objections as to the. relevancy and materiality of these exhibits might be made at the trial.
• Exhibit “A” was a plat which it was agreed correctly represented the relative locations of the *476 claims in controversy and the mill sites indicated thereon, which plat is here shown.

Passing by, for the present, the exceptions taken to the rulings of the court on the rejection of the decisions of the commissioner of the 'general land office and the secretary of the interior, the material facts in the case may be stated as follows:
January 6, 1880, the Niagara lode claim was located by the grantors of defendant in error.
January 10, 1891, and November 20, 1891, patents were issued for the Kunegunde and Rochester mill sites respectively, for the areas shown upon the plat, without objection upon the part of the owners of the Niagara.
October 26, 1893, application for a patent for the Niagara was filed in the local land office by the then owners of the claim.
February 7, 1897, plaintiff in error’s grantors located the Sherman P. lode claim, embracing the territory shown by the shaded portion of the plat, the discovery shaft of which was within the exterior *477 boundaries' of the Niagara, at the point indicated upon the plat.
April 22, 1897, entry of the Niagara for patent was made in the local land office, and receiver’s receipt issued thereon.
August 23,1897, the commissioner of the general land office held the entry for cancellation and the application for patent for rejection, “to the extent of that portion lying easterly of line 4-5 of the Rochester mill site. ’ ’
October 23, 1897, on a motion for review, the commissioner of the general land office affirmed the foregoing decision.
February 28, 1899, the secretary of the interior affirmed the decision of the commissioner of October 23, 1897.
June 14,1897, the commissioner finally cancelled the entry “as to all that portion of the Niagara lying east of line 4-5 of the Rochester mill site. ’ ’
It is agreed that the Niagara lode claim was duly located upon the unappropriated public domain January 6,1880; that during 1895 a trench was dug along the entire length of that portion of the Niagara claim lying easterly of the Kunegunde mill site disclosing therein a vein, claimed by defendant in error to be the Niagara vein, and that such vein passes through the easterly end line of the Niagara lode claim as located; that during 1896 the owners of the Niagara lode claim performed the annual assessment on that portion of the claim lying westerly of the Rochester mill site, and for the years 1897 and 1898, $100.00 worth of work was done upon both ends of the Niagara claim; that defendant in error claims the ground in controversy by virtue of the location of the Niagara lode and a full compliance upon her part, and upon the part of her grantors, with the laws relating to, the discovery, location and possession of lode *478 mining claims and not by virtue of the receiver’s receipt issued, the application for patent having been abandoned. It is also agreed that the grantor of plaintiff in error, February 6, 1897, located the shaded portion of the plat as the Sherman P. lode by sinking a discovery shaft thereon at the • point indicated on the plat, and April 12,1897, filed a location certificate thereof, claiming that at that time the same was unappropriated public domain.
At the trial plaintiff in error offered in evidence the decisions of the commissioner of the general land office and the secretary of the interior above referred to, which were excluded upon objection of defendant in error, whereupon the court found the issues in fávor of defendant in error, and judgment was rendered in her favor for the ground in controversy, to review which is this writ of error.
It is contended by plaintiff in error:
First, that the owners of the Niagara claim surrendered to the public domain that portion of it lying easterly of the Kunegunde mill site, by acquiescing in the entry and patenting of the mill sites, which segregated into two- non-contiguous portions, the lode claim; and,
Second, that the officers of the land department determined that such segregated portion ceased to be a part of the Niagara claim when the mill sites were patented, and that the subsequent entry of the Niagara, as to that portion, was void.
It will be borne in mind that this is an action in ejectment, wherein the plaintiff relies solely upon the title derived through and by virtue of a prior, subsisting and valid mining location and in no wise relies upon proceedings in the land office for the acquisition of a patent title, or upon the receiver’s receipt hereinbefore referred to.
By virtue of U. S. Rev. Stats., sec. 2322, the *479 locator. of. a mining location segregates from the public' mineral domain of the government the land located,, and-the grant confers upon him the exclusive right,of possession and enjoyment of the surface, and any lodes or veins, the top or apex of which is within its exterior boundaries, and so long as such locator complies with the requirements of the act, he can protect hi's right to the exclusive possession of the surface of his claim, as well as such lodes or veins, from invasion, by any subsequent locator.
In Beck v. Meagher, 104 U. S. 279-284, it is said:
“Mining claims are not open to relocation until the lights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has in law abandoned his claim, and left the property open for another to take up. The right of location upon the mineral lands of the United States is a privilege granted by congress, but it can only be exercised within the limits prescribed by the grant. A location can only be made where the law allows it to be done. Any attempt to go beyond that will he of no avail. Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such, thing to be done. ’ ’
And, again, in Gwillim v. Donellan, 115 U. S. 45-49:
“A valid and subsisting location' of mineral-lands, made and kept in accordance with the provisions of the statutes of the United States, has the effect of a grant by the United States of the right of' present and exclusive possession of the lands located. If, when one enters on land to make a location theré' is. another location in full, force, which entitles its *480 owner to the exclusive possession of the land, the first location operates as a bar to the second. ’ ’
In Del Monte M. & M. Co. v. Last Chance M. & M. Co., 171 U. S. 55-78, after quoting the above, Mr. Justice Brewer, commenting thereon, said:
“The question presented in each of those cases was whether a second location is effectual to appropriate territory covered by a prior subsisting and valid location, and it was held it is not. Of the correctness of those decisions there can be no doubt. A valid location appropriates the surface and the rights given by such location cannot, so long as it remains in force, be disturbed by any acts of third parties. ’ ’
Such has been the doctrine of the courts of this state since Armstrong v. Lower, 6 Colo. 393.
Authorities to the foregoing effect might be indefinitely multiplied. The attempt to make a location upon territory that is, at the time, embraced within a prior, subsisting and valid location is void. The prospector is guilty of a trespass; even when he goes upon such a subsisting location for the purpose of making his discovery and every subsequent act by him in attempting to perfect a location is an additional trespass.
This brings us to a discussion and determination of the question presented by the first proposition contended for by plaintiff in error, to wit: that the owners of the Niagara, claim surrendered to the public domain that portion of it lying easterly of the Kunegunde mill site, by acquiescing in the entry and patenting of the mill sites.
In this connection surrender and abandonment are synonymous.
There is no question of statutory forfeiture in this case.
It is a settled principle of law that an abandon *481 ment of property is a question of intent. — Omar v. Soper, 11 Colo. 380-390; Miller v. Hamley, 31 Colo. 495-500.
The question being one purely of intent, the fact is to be determined by the acts and conduct of the party.
The acts and conduct of the owners of the Niagara claim negative any idea of an intention upon their part to abandon or surrender that portion of tbeir claim in controversy herein.
After the ruling of the commissioner of the general land office of August 23, 1897, holding for cancellation that portion of their entry lying easterly of line 4-5 of the Bochester mill site, they attempted to avoid the force and effect of that ruling, by disclosing the existence of the Niagara vein throughout the entire length of that portion of the claim held for cancellation, and failing in this, they abandoned their application for patent, and elected to rely solely upon their grant from the government under their location, and at the date of the commencement of this suit had complied with all the requirements of the law as to annual labor, and for several years immediately preceding the attempted location of the Sherman P. performed $100.00 worth of work upon that portion of the claim lying east of the Kunegunde mill site.
. Under the facts of this case, so far as their intention controls, the extreme measure of the loss sustained by them in allowing the two mill sites to go to patent without adverse proceedings was that portion of their claim lying within the exterior boundaries of the mill sites. Therefore, upon the agreed facts, we must conclude that plaintiff in error’s first position is not well taken.
As to the second position relied upon, that the officers of the land department decided that such seg *482 regated portion of the Niagara claim ceased to be a portion of snch claim when the mill sites were patented, we may say that the officers of the land department did not so decide. They simply held the entry for cancellation and the application for rejection.
This brings ns to a discussion and determination of the force and effect of an order of cancellation of a mineral entry, such as this record presents, made by the officers of the land department.
The cancellation of a mineral application and entry for patent does not of itself operate to restore the land to the public domain and render it subject to relocation; it does not divest the patent claimant’s title; it simply checks or terminates the patent proceedings.
The cancellation of the entry — of the receiver’s receipt — is, like its issuance, a mere incident in the proceedings prescribed for procuring title from the government; although the receiver’s receipt, while it remains in force, is evidence of compliance with preliminary patent conditions, yet its revocation, and nothing more, of itself does not evidence either a forfeiture or relinquishment of the location or claim by the applicant; it has no necessary connection either Avith the segregation of the land from the public domain or its restoration thereto.
“Such cancellation (of the receiver’s receipt) would not of itself render the ground subject to relocation. The applicant would simply be relegated to such possessory rights as he had prior to the initiation of patent proceedings and such as he may have subsequently acquired.” — Lindley, § 772.
“The fact that the entry was cancelled will not of itself render the ground subject to relocation. The original location is not affected thereby.” — Barringer & Adams, 316.
In Branagan v. Dulaney, 2 L. D. 744, the sec *483 retary of the interior, speaking of the rights of a locator of a. mining claim, says:
‘ ‘ The government gives the possessor • of a lode his choice, to hold it without a patent, or to take patent. If he attempts to take a patent and finds that he is met with obstacles not anticipated, he may relinquish his attempt to' secure a patent, and continue to hold by right of possession. Thus, when the applicant to enter a lode claim is met with an adverse claim, he may, if he choose so to do, avoid a legal conflict by dismissing his application for patent, and rely on his title by possession given him by the local laws and customs, and a compliance therewith.”
In the case of The Clipper Mining Co., reported in 22 L. D. 527, the secretary of the" interior said:
“The judgment of the department in the Searl Placer case went only to the extent, of rejecting the application for patent. The department did not assume to declare the location of the placer void, as contended by counsel, nor did the judgment affect the possessory rights of the contestant to it.”
In the case of McGowan et al. v. Alps Mining Co., 23 L. D. 113, the secretary of the interior, in speaking of the effect of a cancellation of a mineral entry, said:
“The fact that the entry was cancelled would not, of itself, render the ground subject to relocation. The original location of the lode was not affected by the cancellation, even though it had been regular, and the owner could still hold it under its possessory right, so long as there was a compliance with the requirements of the law.”
In Beals v. Cone et al, 27 Colo. 473-483, Justice Gabbert, commenting upon the above, said:
“The fair inference from these rulings is, that J the judgment of the department, rejecting an application for patent and nothing more, leaves the appli *484 cant with the same rights as though no application had ever been made.”
Our conclusions are, that that portion of the Niagara claim lying easterly of the Kunegunde mill site was not, upon the date of the attempted location of the Sherman P. claim, by act of the owners of the Niagara claim, by operation of law, or by the decision of the officers of the land department, a part of the unappropriated mineral domain of the United States, and that, therefore, the attempted location of the Sherman P. claim was void.
Plaintiff in error cites Gurney v. Brown, 32 Colo. 472, 77 Pac. 357.
The facts in the Gurney-Brown case are so unlike the facts in the case under consideration as to make that authority inapplicable. In fact, - neither of the points ruled herein were before the court in that case.
To point out here the dissimilarity in the facts of that case and this case can accomplish no beneficial result, and would unnecessarily prolong this opinion.
There being no error; in the rulings or judgment of the court below, the judgment will be affirmed.

Affirmed.