## ARMSTRONG *et al. v.* LOWER *et al.*

*(Supreme Court of Colorado, December Term, 1882—Appeal from the District Court of Custer County).*

1.  MINES AND MINING CLAIMS—RE-LOCATION. The re-location of an abandoned claim must be made in substantially the same manner as is required in an original location. In neither case can the "discovery" shaft or tunnel be upon ground already appropriated, and in the possession of another.

2.  SAME—LOCATION. To perfect a valid location, the prospector must discover a vein or lode upon the *unoccupied* and *unappropriated* public domain, and *inter alia*, sink his discovery shaft within the limits of the territory he *has a right to appropriate.* This link is as important as any other in the chain of acts required by law to perfect his location.

3.  SAME—DEFENSES—EVIDENCE. Parties to a suit involving a mining claim have a right to avail themselves of any defects in the location, and for the same reason that they may show no discovery shaft was sunk on the claim by plaintiff, they may show that such shaft was sunk within ground held and appropriated by a third person, notwithstanding such third person is in no way interested in the suit. Section 256 of the Code does not apply in such case.

4.  SAME—PRESUMPTIONS IN FAVOR OF LOCATOR. When one has discovered a lode upon the unoccupied public domain, and within apt time performed all the subsequent acts essential to a valid location as provided by law, he is entitled to the presumption that his lode extends throughout the full length of his claim.

HELM, J. This is an action brought in pursuance of an adverse claim filed in the United States Land Office to determine the right of possession of the premises in conflict. It was tried in the Court below prior to the passage of the act of Congress approved March 3, 1881, and, therefore, the changes introduced by that act in the proof required have no application to this case.

Appellee's rights were acquired by virtue of an alleged relocation of an abandoned claim. Both the abandoned and relocated claims are known as the "Swallow Tail" lode or location, and are identical in territory. Appellants, who were defendants below, base their right to the conflicting premises upon a location of the Silver King lode; their alleged location was made subsequent to the re-location of appellees aforesaid. Appellees recovered a verdict and judgment in the Court be-

49

low.　There is not evidence sufficient to support such recovery on the ground of naked possession alone, and the same must be sustained, if at all, upon the proof of a valid re-location of the Swallow Tail lode, by a full compliance with all the requirements of law.

The re-location of an abandoned mining claim is made in substantially the same manner as the original location thereof. The re-locator may, under our statute (section 1825, General Laws of Colorado), adopt a part or all of the boundary stakes, if standing, erected by his predecessor, and he may sink the original discovery shaft ten feet deeper, instead of sinking a new one upon the vein; with these exceptions he must perform all the acts required in making a valid original location, in the same manner and within the same time as though the premises had always remained a part of the unappropriated public domain.　The essential prerequisite to the various acts constituting a valid mining location is the discovery of a vein, lode or ledge of mineral bearing rock in place.　But if the re-locator finds such vein in the discovery shaft of the abandoned claim, he may, under our statute, make a valid re-location thereon; though such finding is not a disclosure of something that "existed before, but remained unknown," and, therefore, technically, perhaps, does not constitute a discovery.

Appellees, in making their re-location of the Swallow Tail lode, availed themselves of the privileges accorded by our statute (Section 1817, General Laws), and excavated a tunnel instead of sinking a discovery shaft.

The evidence and pleadings in the case establish beyond question the facts that said discovery tunnel, while within the surface boundaries of the Swallow Tail lode, was also upon the territory of a prior location known as the Verde claim, with which the said re-location conflicted; and that the said Verde claim, at the date of such attempted re-location, and, at the time of trial, was a valid and subsisting mining location.

Only the unoccupied and unappropriated mineral lands of the General Government are subject to exploration and location.　When one has discovered a vein, and has complied fully with the law in locating a claim thereon, the territory enclosed within his surface boundaries is segregated from the

public domain, in so far as all parties except the Government are concerned; the locator is entitled to the exclusive possession and enjoyment thereof; until it is forfeited or abandoned, the prospector cannot go within such surface boundaries to prospect for mineral veins, and his act, if he do so, is as much a trespass as though the ground were patented. To perfect a valid location, the prospector must discover a vein or lode upon the *unoccupied* and *unappropriated* public domain; he must then perform certain acts, among which is the sinking of his discovery shaft within the limits of the territory which he has a *right to appropriate.* He cannot be allowed to sink such shaft upon ground embraced within a prior valid and subsisting location. This link is as important as any other in the chain of acts required by law to perfect his location. If he may do this work upon another claim, we perceive no good reason why he should not be permitted to make his discovery of mineral, and post his discovery notice also upon such previously appropriated territory. The fact that the owner of the prior location, if such be the fact, makes no objection, is not material; *provided,* he has done nothing which in law will amount to an abandonment of the ground on which the subsequent discovery shaft is situated. He may at any time bring his action of trespass, or ejectment; or, upon proper showing, he may obtain an injunction to prevent repetitions of the trespass; and whether he invoke relief in Courts or not, he may apply for and obtain his patent to the surface ground of his location, and include therein the discovery shaft and other evidence of location upon such surface ground made by the subsequent locator.

The law requires that the record of a mining claim shall contain such a description as will identify the same. R. S. of U. S., Sec. 2324.

The location certificate must state the number of feet claimed in length on each side of the center of the discovery shaft. G. L. of Colo., Sec. 1813.

And any certificate which does not contain such factor in the description, is void. G. L. of Colo., Sec. 1814.

To say, in the face of these statutory provisions, that the discovery shaft may be upon the territory of a prior valid and

subsisting location, would be to sanction the introduction of doubt and uncertainty into the description. For said shaft is the point of beginning in this branch of the description, and to a portion of the territory claimed in each direction therefrom the locator would have no right whatever, and he could never, by virtue of his location alone and subsequent compliance with law, obtain title thereto.

A location cannot be considered valid unless, upon proper development thereof, a patent may be obtained for such portions of the surface ground included therein as embrace the evidence of the essential acts of location, with the exception possibly of one or more of the boundary stakes. If a patent can be obtained for a mining claim, the discovery shaft of which is upon ground already located or patented, it ought in reason to follow, that the $500 worth of development work required might also be upon such previously located or patented ground. The intent of the law to require this development work to be upon the premises sought to be patented, is no clearer than is the intent of the statute to require the sinking of the discovery shaft upon territory *subject to location.* Any other construction would be a violation of the spirit of both statutes, and would lead to the ratification of frauds on the Government.

But it is urged that appellants, having no interest in the Verde claim, cannot be heard to complain.

They have a right to avail themselves of any defect in the location of appellees. It would not be contended that they might not show that appellees never sunk a discovery shaft at all, had such been the fact. But if our conclusions above be correct, appellees are in no better position than if they had in fact never excavated their discovery tunnel.

Counsel asks if benefit shall accrue to appellants, to the injury of appellees, because the Verde owners permitted appellees to do this work upon the Verde claim.

We answer, that there is no evidence of abandonment of the ground on which the work was done, and the assumed laches of the Verde owners in asserting their rights in no way affects the question. Such work was done in constructing what was intended to be a discovery tunnel; and, as we have tried to

show, there was a fatal defect in making a valid location; of which defect appellants might take advantage. But if it had been development work, succeeding a proper location, we would answer the question negatively, because only the Verde owners could complain of the trespass. Section 256 of the Code, upon which appellees rely in their brief and argument, does not militate against the foregoing conclusion; its provisions, that the parties "shall be confined in their evidence to their respective rights and claims, and the rights and claims of their grantors and privies in interest," and that "the action shall not be affected by any rights and claims of third persons not in privity with either party," are aimed at the rule in actions of ejectment allowing defendant to defeat plaintiff's recovery by proving an outstanding title, or better right of possession, in some third party. The object in actions contemplated by that statute, and in the case at bar, is to determine whether plaintiff or defendant has the better right to the possession of the premises in controversy, and the parties should be confined to evidence of their respective rights, regardless of the interests of third persons. But such right of possession in this case rests upon the perfecting of a valid re-location; and it is no violation of section 256 aforesaid to allow proof of the failure to perform one of the acts essential to such re-location, even though the evidence also establishes the fact that actionable injuries were inflicted upon the property of persons who are neither parties to the action nor privies in interest with such parties.

No testimony was offered to show that the vein of the Verde location extended from the point of discovery thereof to that part of the Verde claim whereon was run the Swallow Tail re-location tunnel; and counsel for appellees argue that the presumption exists that the vein does *not* extend thereto, and, therefore, that such ground was a part of the unappropriated public domain, subject to location.

The vein is, of course, the principal thing, and the location should be made in conformity with the strike thereof. "If the lode located terminates at any point within the location, or departs at any point from the side lines, the location beyond such point is defeasible if not void." *Patterson* v. *Hitchcock*, 3 Colo., 533.

But we cannot agree with the learned counsel for appellees as to the presumption existing, proof of such termination of the lode, or departure thereof from the side lines being absent. When one has discovered a lode upon the unappropriated public domain, and has, within the proper time, in good faith performed all of the subsequent acts essential to a valid location as provided by law, he is entitled to the presumption that his lode extends throughout the full length of the claim. This is substantially the doctrine announced in *Patterson* v. *Hitchcock, supra.*

We are aware that there is excellent reason and weighty authority for the contrary position of counsel. But we believe that our conclusion is supported by profounder considerations of justice. The object of location statutes is not merely to fix the amount of surface territory allowed the locator for working purposes; such statutes are also intended to protect him in the exclusive possession and enjoyment of his lode, and all other veins, lodes or ledges, the tops or apexes of which are within his surface boundaries. (See R. S. of U. S., Sec. 2322). If A, B or C may subsequently locate a claim in conflict with his, and throw upon him, in resulting litigation, the burden of proving that his lode extends into the conflicting territory, the location statutes would, in many instances, benefit him but little. If the top or apex of his lode be fifty or sixty feet below the surface, he would be compelled, in order to protect himself, to run drifts the entire 1,500 feet, or sink a vast number of shafts from the surface down to the lode. This would cost him thousands of dollars, and, unless possessed of a fortune, he would be at the mercy, as to a large portion of his claim, of every unscrupulous adventurer who might conclude to profit by his discovery and his toil.

We think that if A has discovered a lode, and performed all the acts required in locating a 1,500 foot claim thereon, and B, by a subsequent and conflicting location, undertakes to hold a portion of A's claim, on the ground that A's lode does not extend to such conflicting premises, the burden of proving that fact by a fair preponderance of evidence should rest upon B. B attempts to build up a right in himself, by reason of A's mistake in fixing accurately the direction of the strike of his

previously discovered lode. This is not exactly analogous to the case where one rests his title or right upon the forfeiture of another; but justice demands the application of the same rule of evidence. The law contemplates that A shall locate his claim along the course of his vein, and, if he fails to do so, he pays the penalty by the loss of his surface ground, and also his lode beyond the point of departure thereof from his side lines. But we cannot conclude that these facts cast upon him, when his right of possession is assailed, the burden of proving, in the first instance, the negative propositions that his lode does not depart from his side lines, and that it does not terminate at some point short of the entire 1,500 feet between his end lines.

It is unnecessary for us to consider the objections presented to the unsupported hearsay evidence of the witness Lower, or to dwell upon the other assignments not covered by the foregoing discussion.

We have said nothing concerning the Big Josie claim, because it in no way affects the issue tried. That location is described in the pleadings, but it does not figure materially either in the evidence or in the briefs and arguments of counsel.

The judgment will be reversed, and the cause remanded.

*Reversed.*

*Montgomery & Rising* and *J. W. Warner*, for appellants.
*Hugh Butler* and *Platt Rogers*, for appellees.