[No. 1942]

# ROUND MOUNTAIN MINING COMPANY, ET AL., APPELLANTS, *v.* ROUND MOUNTAIN SPHINX MINING COMPANY, ET AL., RESPONDENTS.

1. APPEAL AND ERROR—CONCLUSIVENESS OF FINDINGS—CONFLICTING EVIDENCE.

    Findings of the lower court upon conflicting evidence are binding upon the supreme court.

2. MINES AND MINERALS—RIGHT ACQUIRED—EXTRALATERAL RIGHTS —CROSS VEIN OR LODE.

    Where a mining claim containing the apex of a cross lode, lying entirely within the surface boundary of a prior claim or group owned by the same party, is held invalid, the side lines of the prior claim constitute end lines in determining the extralateral rights on the cross vein, across which, as they extend vertically downward, the lode cannot be followed.

3. MINES AND MINERALS—ACTION TO DETERMINE RIGHTS—BURDEN OF PROOF.

    Where the location certificate of a junior mining claim recited that the claim was wholly within the boundaries of another claim, such certificate was sufficiently ambiguous or conflicting to cast upon the subsequent locator the burden of showing that the prior claim was invalid.

4. MINES AND MINERALS—ACTION TO DETERMINE RIGHTS—ADMISSIBILITY OF EVIDENCE—LOCATION CERTIFICATE.

    In determining priority of mining claims, the declarations contained in the record, by which the subsequent patent was obtained, were admissible in the absence of proof that the record did not state the truth.

5. MINES AND MINERALS—VALIDITY OF LOCATION WITHIN VALID EXISTING LOCATION.

    The location of a mining claim, based upon a discovery of mineral within the limits of a valid existing claim, was void.

6. MINES AND MINERALS—PROCEEDINGS IN LAND OFFICE—CONCLUSIVENESS OF DECISION.

    The issuance of a patent by the land department after adjudication by the proper tribunal is conclusive and not subject to collateral attack as to all matters before the tribunal for adjudication and as to all persons who were parties to such adjudication, and hence, where the owner of a mining claim did not file an adverse to a subsequent application for patent, the land department's patent to the applicant is conclusive as to the rights of the parties to the surface ground included in the application.

7. MINES AND MINERALS—LANDS OPEN TO LOCATION—UNOCCUPIED AND UNAPPROPRIATED MINERAL LANDS.

    Land legally segregated from occupancy or appropriation may be conveyed by the United States government as a mining claim.

8. MINES AND MINERALS—VALIDITY OF LOCATION—CLAIMS ALREADY CONVEYED.

   Where a claim to land legally segregated from occupancy or appropriation is conveyed, the government has no further right to patent a claim located wholly within its boundaries, since it cannot convey the same tract of land twice.

9. MINES AND MINERALS—PROCEEDINGS IN LAND OFFICE—CONCLUSIVENESS.

   In an equitable action to quiet title to a lode or vein which involves questions of extralateral rights not involved in the proceedings for patent, defendant, who filed no adverse thereto, is not estopped from questioning the validity of the location of the claim under which the plaintiff seeks to enforce such extralateral rights as against him.

10. MINES AND MINERALS—EQUITABLE ACTION TO ESTABLISH RIGHTS —DEFENSES.

    In an equitable action to determine rights to mining claims, the invalidity of plaintiff's patent may be pleaded as a defense and tried upon the same principles as an original bill in equity.

11. MINES AND MINERALS—PROCEEDINGS IN LAND OFFICE—JURISDICTION TO DETERMINE PRIORITY.

    The land department has jurisdiction to determine questions of priority as between conflicting lode locations embraced in the same group application.

12. EVIDENCE — DECLARATIONS — SELF-SERVING DECLARATIONS BY AGENT.

    In an equitable action to quiet title to a mining claim, field notes made by plaintiff's surveyors, containing an exclusion of conflict area from one claim in favor of another, were properly excluded as self-serving acts by an agent of the plaintiff which could not be binding on the defendant.

13. MINES AND MINERALS—ACTION TO ESTABLISH RIGHTS—JURISDICTION OF DISTRICT COURT—DETERMINATION OF PRIORITY.

    In an equitable action to quiet title to a lode or vein, where the land department did not determine the question of priority of claims in the same group, but made a double grant of the conflicting area, appearing upon the face of the later patent, the district court had jurisdiction to determine such priority.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Theron Stevens,* Judge.

Action by the Round Mountain Mining Company and others against the Round Mountain Sphinx Mining Company and others. Judgment for defendants, and plaintiffs appeal. **Affirmed.** [Petition for rehearing pending.]

The facts sufficiently appear in the opinion.

*R. G. Withers,* and *Dickson, Ellis, Ellis & Schulder,* for Appellants:

A certificate of location, or notice of location, in and of itself, is no evidence whatever of the fact of discovery. Any statement that might be found therein as to date of discovery, or any mention therein contained of a discovery, is but the *ex parte* statement of the party writing it. (*Smith* v. *Newell,* 86 Fed. 56; *Flick* v. *Gold Hill & L. M. Co.,* 8 Mont. 298; *Fox* v. *Myers,* 29 Nev. 169; *Erhardt* v. *Boaro,* 113 U. S. 527; Lindley on Mines, sec. 392.)

The location of the Los Gazabo does not purport to be a relocation of the Sunnysides, or of any part of either of them. The statement found in the notice that it is wholly within ground claimed by the Sunnysides falls far short of an admission that either of the Sunnysides was, at the time of the location of the Los Gazabo, a valid location. On the contrary, there is in this language an implied assertion of the invalidity of the Sunnyside claims.

It is difficult to understand how the court reached the conclusion that the statement as to the date of the Sunnyside location contained in the application for patent was to be taken as conclusive or even competent evidence that a discovery was in fact made on the 20th of February, 1906. As we have already pointed out, Gordon was not on the premises until the 10th of March; nor was Davis on the ground prior to the 14th of March.

Discovery of a vein or lode of rock in place is, of course, an indispensable prerequisite to a valid location. Full compliance with all the requirements of the law, local, state and national, with respect to the marking of boundaries, the posting and recording of a notice of location, and prosecution of work, will, in the absence of discovery, be ineffectual to segregate the ground embraced within the attempted location from the public domain. Until the discovery of a vein or lode thereon, the territory is still open to the examination and exploration of any qualified locator who may enter thereon peaceably. And if one so enters and is the first to discover a vein or

lode therein, he may lawfully make a location based upon this discovery. If he does so, such location as to the ground covered thereby becomes, under the law, the first and only valid claim. (1 Lindley on Mines, sec. 335; *Miller* v. *Chrisman,* 140 Cal. 440; *Erhardt* v. *Boaro,* 113 U. S. 527; *King* v. *Amy and Silversmith Con. M. Co.,* 152 U. S. 222; *Creed* v. *Uintah T. M. & T. Co.,* 196 U. S. 337; *Hanson* v. *Craig,* 170 Fed. 62.)

If we are correct in our contention that there is no evidence to justify this conclusion of the court, it follows that the decree must be reversed; for it would be at once apparent that it was rendered upon an erroneous assumption respecting an all-important fact in the case. It would be impossible for this court to say that the judgment or decree would have been the same if the lower court had not fallen into error respecting this question of fact. On the contrary, in the light of the evidence, it must be apparent that but for such error the learned judge would have been impelled to the conclusion that Stebbins, who attempted the location of the Sunnysides Nos. 1, 2, and 3 on the 20th of February, had not, prior to the location of the Gazabo on the 3d of March, made any discovery of a vein or lode within the limits of either of the Sunnysides; that neither of them was a valid location on the date last named, and the decree would have been in favor of plaintiff in accordance with the prayer of its complaint. But if there were any evidence to support the finding of the learned judge that the locations by Stebbins of the Sunnysides Nos. 1, 2, and 3 were respectively based upon a discovery made on the Gazabo vein, still neither of these attempted locations would have been a valid and subsisting mining claim when the Gazabo location was made, for the reason that neither the location monument, nor notice of location of either claim, was placed on a lode or vein at the point of discovery, as required by the statutes of Nevada, but was placed hundreds of feet away from any part of the top or apex of that vein. (Comp. Laws, 208; Lindley on Mines, sec. 329, p. 595; *Butte Northern Copper Company* v. *Radmilovich,* 101 Pac. 1078; *Cheeseman* v. *Shreeve,* 40

Fed. 787; *Copper Globe M. Co.* v. *Allman*, 23 Utah, 410, 64 Pac. 1019; *Fox* v. *Myers*, 29 Nev. 169.)

A patent from the government for a mining claim or other lands, pursuant to the decision of the land department, in a matter over which it had jurisdiction, passes the legal title notwithstanding the determination of the department may have been based upon a mistaken view of the law or of the evidence submitted. The validity of the patent cannot be called in question collaterally. It is conclusive evidence of the title in all actions at law. It cannot be adjudged void, even in a direct attack in a court of equity; and it matters not whether there was or was not any contest before the department. (*Smelting Company* v. *Kemp*, 104 U. S. 636; *Steel* v. *Smelting Co.*, 106 U. S. 447; *Quinby* v. *Conlan*, 104 U. S. 420; *French* v. *Fyan*, 93 U. S. 169; *Johnson* v. *Townsby*, 13 Wall. 72; *Shipley* v. *Cowan*, 91 U. S. 330; *United States* v. *Winona and St. Paul Ry. Co.*, 67 Fed. 948; *Johnson* v. *Drew*, 171 U. S. 93, 99; *Doe* v. *Waterloo M. Co.*, 54 Fed. 935; *King* v. *McAndrews*, 111 Fed. 860; *Carson City Gold and Silver M. Co.* v. *North Star M. Co.*, 83 Fed. 658; *Gail* v. *Best*, 78 Cal. 235; *Talbot* v. *King*, 9 Pac. 439; *Peabody G. M. Co.* v. *Gold Hill M. Co.*, 111 Fed. 817; *Courchaise* v. *Bullion M. Co.*, 4 Nev. 375; *Jeffers* v. *Hine*, 2 Ariz. 162; *Iron Silver M. Co.* v. *Campbell*, 29 Pac. 513; *Justice M. Co.* v. *Lee*, 40 Pac. 444; *Butte City* v. *Smoke House*, 12 Pac. 864; *Chambers* v. *Jones*, 42 Pac. 758; *Park* v. *Carroll*, 76 Fed. 474; *United States* v. *Iron Silver M. Co.*, 128 U. S. 673; *Montana Central Railroad Co.* v. *Migeon*, 68 Fed. 811; *Galbraith* v. *Shasta Iron Co.*, 143 Cal. 94; *Calhoun Gold M. Co.* v. *Ajax Gold M. Co.*, 182 U. S. 499; *Creed* v. *Uintah T. M. & T. Co.*, 196 U. S. 337; 2 Lindley on Mines, sec. 777.)

Did, then, the land department have jurisdiction to act upon the plaintiff's application for a patent for the Gazabo and Sunnyside claims? That it had would seem to be too clear to leave any ground for reasonable controversy. Unquestionably the territory in conflict between these claims was subject to sale and disposition by the

government acting through the department; otherwise a patent therefor could never issue. When the application for a patent to this conflict area was made, not only did the department have authority to act thereon, but it was charged under the law with the plain duty to act and to determine which of the conflicting claims was entitled to a patent therefor. If, in the discharge of this duty, it erred in awarding a patent to the Gazabo, which should have been awarded to the Sunnysides, it cannot be said that it acted without jurisdiction. The most that could be claimed would be that in passing upon a matter clearly within its jurisdiction it rendered an erroneous decision. (*Foltz* v. *St. Louis and St. Paul Ry. Co.*, 60 Fed. 316; *King* v. *McAndrews*, 111 Fed. 860; *United States* v. *Winona and St. Paul Railway Co.*, 67 Fed. 948; *United States* v. *Schurz*, 102 U. S. 378; *New Dunderberg M. Co.* v. *Old*, 79 Fed. 598; *United States* v. *Northern Pacific Railroad Co.*, 95 Fed. 864; *James* v. *Germania Iron Co.*, 107 Fed. 597; *Bingham Amalgamated C. Co.* v. *Ute Copper Co.*, 181 Fed. 748-9.)

One who would attack a patent for a mistake of fact in the decision of the questions which condition its issue must distinctly plead and clearly prove the evidence before the land department from which the mistake resulted, the particular mistake that was made, the way in which it occurred, and the fact that if it had not been made the decision would have been otherwise, and the patent would not have issued, before any court can enter upon the consideration of any issue of fact determined by the department. (*United States* v. *Northern Pacific Railroad Co.*, 95 Fed. 864; *James* v. *Germania Iron Co.*, 107 Fed. 597; *Hooper* v. *Young*, 140 Cal. 274; *Durango Land and Coal Co.* v. *Evans*, 80 Fed. 425.)

It is, of course, impossible that any court can say that the land department was misled as to the facts, or that in its decision it erred in the interpretation of the law applicable to the facts before it and upon which it was required to pass judgment, without knowing what the evidence and all the evidence before the department was. The trial court, having reached the conclusion that the

location of the Los Gazabo was void, determined, as a corollary, that the patent issued thereon, after regular proceedings had in the land office in strict conformity with the requirements of the act of Congress (Rev. St. U. S. 2325), was itself void. In none of the cases cited by the learned judge was any such question as this involved. We think we may safely say that no case can be found to support this decision, while the Colorado case of *Seymour* v. *Fisher*, 27 Pac. 240, is expressly opposed to it. See, also, *Bingham Amalgamated C. Co.* v. *Ute Copper Co.*, 181 Fed. 748.

The defendant, Round Mountain Sphinx Company, as owner of the so-called Gold Leaf mining claim, not having filed an adverse claim to plaintiff's application for patent, is now precluded from questioning its validity. (*Wight* v. *Dubois*, 21 Fed. 693; *Kannaugh* v. *Quartette M. Co.*, 27 Pac. 245; *Golden Reward M. Co.* v. *Buxton M. Co.*, 79 Fed. 868; *Mining Co.* v. *Bullion M. Co.*, 3 Sawy. 634, 659; *Deno* v. *Griffin*, 20 Nev. 249; *Steel* v. *Gold Lead M. Co.*, 18 Nev. 87; *Nesbitt* v. *Delamar*, 24 Nev. 287; *Richmond Co.* v. *Ross*, 114 U. S. 576; *Creed* v. *Uintah T. M. & T. Co.*, 196 U. S. 337; *Talbot* v. *King*, 5 Mont. 434.)

But the learned judge before whom the case was tried says in his opinion, in effect, that the question of priority of location as between the Los Gazabo and the several Sunnysides was not before the land department. This is clearly error. The question of the validity of the Los Gazabo was directly and necessarily involved in the proceedings in the land office. The decision of the department, by virtue of which the patent was issued, could not have been rendered unless the department had found in favor of the validity of the Los Gazabo, for the patent embraces territory which was claimed, and could only be claimed, by the applicant by virtue of its ownership of the Gazabo.

Moreover, the notices of location of the Sunnysides Nos. 1, 2, and 3, presented to the land office in connection with the application for patent, bore date of February 20, 1906, while the Los Gazabo notice of location bore date of March 3 following. The field notes and the plat required

by law to be filed with the application must have shown at a glance that the Gazabo claim, except as to the small triangular piece of ground in the northwest corner thereof, was wholly within these Sunnyside claims. Thus, on the face of the application for a patent to the Los Gazabo, the attention of the officials of the department was directly called to the fact that the area in conflict between that claim and the Sunnysides would belong to the latter claim, if a valid location of these claims had been made on the 20th of February, or at any time prior to the location of the Gazabo. Before it could be determined which of the claims was entitled to a patent for this conflict area, the department had to ascertain whether or not there had been a valid location of the Sunnysides on or before the 3d of March, or whether the Los Gazabo was the first valid location which covered the conflict. It was the duty of the officers of that department under the law to investigate and pass upon this very matter. It is to be presumed that they discharged this duty. And, as we have said, the department, upon such investigation, must have determined that the discovery made by the locators of the Los Gazabo, and upon which that location was based, was upon vacant public mineral domain; in other words, that the discovery of the Los Gazabo antedated the discoveries upon which the Sunnyside locations were respectively based. This involved the determination of a question of fact, or a mixed question of law and fact. The decision of the department, in a matter over which it has jurisdiction, is as to all questions of fact determined by it, in the absence of fraud, unassailable either in a court of law or a court of equity. Its decision upon a question of mixed law and fact is likewise unassailable, unless it is made to appear clearly wherein, if at all, the department fell into any error of law in reaching its conclusion. (*Marquez* v. *Frisbie,* 101 U. S. 473; *Bates & Gill Co.* v. *Paine,* 194 U. S. 106.)

How is it possible for the court to say, in the absence of what the evidence before the department was, that it fell into any error, either of law or fact, in awarding the

patent in question to the Los Gazabo claim? We submit if the evidence before the department, as to whether or not the location of the Gazabo was the first valid location made upon the Gazabo vein, was the same as was introduced on the trial of this cause, the only correct conclusion which could have been drawn therefrom was that which it is evident the department reached in passing upon this application for patent.

The assumption or contention that there is a double grant of this conflict area, or that in the grant there is found any uncertainty or ambiguity as to which of the conflicting locations was awarded, or took title thereto, under the grant, is one that finds no warrant in the record. What are the facts as disclosed by the record? Was there a double grant of this conflict area? Let us look first to the patent alone. From it we find (taking the descriptions of the several claims as found therein) that the total area of the Sunnyside No. 1 is 19.415 acres; that the total area of the Sunnyside No. 2 is 16.274 acres; that the total area of the Sunnyside No. 3 is 18.839 acres; that the total area of the Sunnyside Fraction is 2.644 acres; that the total area of the Los Gazabo is 16.484 acres, or a total of 73.656 acres; but it appears upon the face of the patent that there was excluded from the Sunnyside No. 3 a small triangle, the area of which was .083 acres, leaving 73.573 acres, but, by the patent, 57.137 acres only were conveyed. Taking again the descriptions contained in the patent, we find that the area in conflict between the Gazabo and the Sunnyside No. 1 was 6.481 acres; between the Gazabo and Sunnyside No. 2 was 6.571 acres; between the Gazabo and Sunnyside No. 3, 2.317 acres, and between the Gazabo and Sunnyside Fraction, 1.067 acres, or a total area of 16.436 acres. Now, 73.573 less 16.436 equals 57.137, or the exact acreage conveyed by the patent. Thus it clearly appears upon the face of the patent itself that there was but a single grant of the conflict area, and, so far at least as the Sphinx Company is concerned, all uncertainty as to which of the conflicting locations took

title thereto, should be set at rest by the admission in its answer that a patent had been obtained for the Los Gazabo.

It is only necessary to look to the patent, and to read and construe it in the light of the act of Congress and the regulations of the land department in force at the time it was issued, to discover that the department must have determined the Los Gazabo location was a valid one, and that to that claim the legal title to the conflict area was by the patent conveyed. (U. S. Rev. Stats. 2325; 2 Lindley on Mines, secs. 671, 1243–1245.)

The regulations of the land department provide (par. 34) that four plats and one copy of the original field notes in each case shall be prepared by the surveyor-general, and one plat and a copy of the field notes is to be given to the claimant for filing with the proper register, to be finally transmitted by that officer, with other papers in the case, to the general land office at Washington. (2 Lindley, pp. 1697, 1698.)

Now, the commissioner whose duty it was in the first instance to pass upon the application and to determine whether a patent should issue thereon, and if so whether it should be for the whole or a part only of the premises embraced in the application, had but to read these field notes, or to casually inspect the plat, to discover what the true relative situation, with respect to each other, of the five claims mentioned in the application was. It was his duty to examine these documents and it must be presumed that he did so.

It has been so long established that an attempted location of a mining claim, based solely upon a discovery within the limits of a prior valid and subsisting claim, is wholly void that no one would now venture to question it. Surely it is not to be presumed that the officials of the land department, charged with the supervision of the applications for patent to mining claims, were ignorant or unmindful of this elementary proposition, especially in view of the fact that it has been recognized in the department by repeated rulings and decisions, beginning

as early at least as the case of *Branagan* v. *DuLaney*, 2 L. D. 744, and cited in 2 Lindley, sec. 337.

"The validity of the Los Gazabo claim was not before the department." This is a manifest error on the part of the learned judge who pronounced the decision. In passing upon the application for this group of claims, the clear duty was imposed upon the department to determine the validity of each location. (*Steele* v. *Taylor*, 3 A. K. Marshall, 225, 13 Am. Dec. 151; *Faust* v. *Johnstone*, 110 Pac. 294; *Cragen* v. *Powell*, 128 U. S. 691; *Brown* v. *Hunger*, 21 How. 305; *Seward* v. *MaLotte*, 15 Cal. 304; *Hunt* v. *Rawley*, 87 Ill. 491; *Turner* v. *Union Pacific Ry. Co.*, 112 Mo. 542; *Lunt* v. *Holland*, 14 Mass. 149; *Lyon* v. *Fairbank*, 79 Wis. 455, 24 Am. St. Rep. 732; *Alexander* v. *Lively*, 5 B. T. Monroe, 159, 17 Am. Dec. 50; *Chesapeake B. R. Co.* v. *Washington T. & C. R. Co.*, 199 U. S. 247; *Kellogg* v. *Finn*, 119 N. W. 545; *Coombs* v. *Virginia Iron C. & C. Co.*, 106 S. W. 315, and cases there cited.)

In the case at bar the field notes of the survey were offered in evidence, objected to by defendants, and the objection sustained. Error is assigned upon this ruling of the court. The field notes are incorporated in the record for identification. They are before this court, and if it be found that the court below erred in excluding them, they should, we submit, be considered by this court and given the same effect as though the objection to the offer had been overruled.

If there were any uncertainty or ambiguity on the face of the patent itself as to which of the conflicting claims was awarded title to the conflicting area, it is removed and the question settled by these field notes. They show beyond doubt that the area in conflict was excluded from the Sunnysides and credited to the Los Gazabo.

The claim or pretension on the part of counsel for respondents that appellant could ever in any action assert or claim extralateral rights upon this segment of the vein, by virtue of its ownership of the Sunnysides, is wholly groundless, and is based upon a manifest misconception upon their part of the facts in the case, as disclosed by this record.

*On Petition for Rehearing:* Under the act of Congress and the rules and regulations of the land department the field notes are as much a part of the patent itself as though they had been written out at length therein. See Instructions of Commissioner of the General Land Office, in force at the time the field notes were returned to the office of the surveyor-general (July, 1906). These will be found in the manual of instructions, dated July 6, 1897, and addressed by the then commissioner to the "Surveyors-General and United States Deputy Mineral Surveyors" (pars. 4, 32, 33, 35). The specimen field notes referred to will be found at pages 29–43, and the plat at the close, of the manual. (U. S. Rev. Stats. 2325; *Waskey* v. *Hammer,* 223 U. S. 85.) The fact is indisputable that, under the rules and regulations in force at the time the survey under discussion was made, it was the plain duty of the surveyor to make the exclusion found in his field notes, and if he failed to do so, his survey would not have been accepted by the department.

We respectfully submit that, there being nothing found in these field notes not strictly in line with the official duty of the deputy mineral surveyor, it was error to exclude them. They were the notes of the survey upon which the application for patent was based. They were in literal compliance with the regulations in force. They show beyond doubt that the area in conflict was excluded from the Sunnysides and accredited to the Los Gazabo. They at once removed any uncertainty or ambiguity existing in the patent itself as to which of the conflicting claims was awarded title to this conflict area. The courts take judicial notice of these rules and regulations of the land department. (*Cana* v. *U. S.,* 152 U. S. 221; *U. S.* v. *Flournay Livestock Co.,* 71 Fed. 576; *Wilkins* v. *U. S.,* 96 Fed. 837; *Smith* v. *City of Shackopee,* 103 Fed. 240; *King* v. *McAndrews,* 104 Fed. 430; *U. S.* v. *Slater,* 123 Fed. 115; *Larsen* v. *First National Bank,* 92 N. W. 729; *Parsons* v. *Vengke,* 61 N. W. 1036.) And a lawful rule or regulation has the force of law. (*Wilkins* v. *U. S.,* 96 Fed. 837; *Grady* v. *U. S.,* 98 Fed. 238; *Files* v. *Davis,* 118 Fed. 465.)

What is there upon which to base the statement that there was no exclusion in the verified application or in the publication of notice, or in the final application to purchase? Neither of these documents is found in the record. Neither of them was offered in evidence. They are not before the court. What exclusion of the conflict area is or is not found and contained in either of these documents cannot be ascertained or determined from anything found in the record.

How can it be said that the department failed to exercise such jurisdiction? We have neither allegation, nor proof in the record, as to what facts were before the department, or what the evidence was upon which it acted in directing the issuance of the patent.

Not only is it admitted that a patent for the Gazabo has been obtained, but it is apparent upon the face of the patent itself that it conveys territory outside of the Sunnysides, and which was covered by the Los Gazabo location only.

Clearly it was the duty of the department to pass upon the validity of the Los Gazabo location. That it did so, and that its determination was in favor of its validity, must be presumed, for, in the absence of such determination, the department would not have been justified in directing a patent which conveyed territory covered by no location except the Gazabo; and, a patent having been issued for that claim, it must be presumed that the location of the claim was based upon a valid discovery, and that the department so found. (*Work M. & M. Co.* v. *Dr. Jack Pot M. Co.*, 194 Fed. 620.)

A certificate of location, or notice of location, in and of itself is no evidence whatever of the fact of discovery. Any statement that might be found therein as to date of discovery, or any matters therein contained of a discovery, is but the *prima facie* statement of the one writing it. (*Smith* v. *Newell*, 86 Fed. 56; *Flick* v. *Gold Hill & L. M. Co.*, 8 Mont. 298; *Fox* v. *Meyers*, 29 Nev. 169; *Erhardt* v. *Boaro*, 113 U. S. 527; 1 Lindley on Mines, sec. 392.)

*Curtis H. Lindley, Detch & Carney, Wm. E. Colby, Grant H. Smith,* and *McIntosh & Cooke,* for Respondents:

The Sunnyside-Los Gazabo patent is ambiguous, and the trial court had to determine the question of priority in order to clear up the question of ambiguity.  The patent purports, as far as its description is concerned, to convey this conflict area twice, for it is twice described. Ordinarily this situation would give rise to no difficulty, for the patent conveys all the surface territory embraced within the outside perimeter bounding the Los Gazabo-Sunnyside group as a whole.  However, by reason of the provisions of U. S. Rev. Stats. 2322, containing the grant of extralateral rights for lode claims, in addition to the facts of ownership of the mere surface, it becomes essential at times to ascertain just when the right to the surface attached, in order to determine the priorities as between conflicting extralateral rights flowing from distinct surface ownerships.

That the government cannot convey the same tract of land twice, and, once having made a conveyance of a piece of land, cannot again grant the same land, is elementary.  (*Wright* v. *Roseberry,* 121 U. S. 488; *Davis's Administrator* v. *Weibold,* 139 U. S. 507.)

The same situation would exist if the patents describing the common tract were issued to one and the same patentee, instead of to different patentees.  The second attempted grant on the part of the government would be impotent and would convey no title as far as the tract previously granted is concerned, and that portion of the attempted grant would be void. (*Golden Terra M. Co.* v. *Mahler,* 4 Morr. Min. Rep. 390.)

The fact that the two overlapping tracts of land are described in the same patent would not alter the rule, except that in the case of two separate patents a portion of the attempted grant by the second patent would be void and the area of the land actually conveyed by it would be diminished by the area of the conflict previously conveyed.

It is clearly established when adverse rights are affected the question of priority of title can be inquired into *aliunde,* and the facts on which the diverse titles are based investigated when they do not appear on the face of the patents themselves.    The doctrine of relation is invoked to determine which is the oldest and superior right. (13 Cyc. 627–628, 740, 745; *U. S. M. Co.* v. *Lawson,* 207 U. S. 1, 17; *Smith* v. *Athern,* 34 Cal. 506; *Yates* v. *Smith,* 38 Cal. 60; *Pappe* v. *Athern,* 42 Cal. 606; *Iron Silver M. Co.* v. *Campbell,* 135 U. S. 286; *Smelting Co.* v. *Kemp,* 104 U. S. 636.)

Taking the patent by itself, it is impossible to ascertain whether or not the Los Gazabo claim is entitled to the conflict area.    If not entitled to the conflict area, the Los Gazabo claim has no free apex of the Sunnyside-Los Gazabo vein and hence no extralateral rights.    (U. S. Rev. Stats. 2322; *St. Louis M. Co.* v. *Montana Co.,* 194 U. S. 235, 238; *U. S. M. Co.* v. *Lawson,* 207 U. S. 1, 8.)

This question of priority becomes all-important, and the only way in which it can be determined is by opening up and investigating all the essential antecedent history of the claims, as was done at the trial.    The land department did not determine the question of Sunnyside-Los Gazabo priorities.

Appellant made no exclusion in favor of the Los Gazabo, either in its verified application for patent, or in its published notice, or in its final application to purchase.    With the apparent design of getting such a patent as would enable it to claim an extralateral right in favor of the Los Gazabo or of the Sunnysides, or of both, as occasion demanded—all based on the same segment of vein—it applied for and received a patent to these conflicting claims which made no mention of the conflict.

The only attempt at exclusion is contained in the field notes furnished by the plaintiff's surveyors.    This was a self-serving act by one of plaintiff's agents, and the land department purposely refused to determine this question of priorities in the face of the sworn positive statement

contained in the application for patent, which furnished the basis for the whole prior to the Los Gazabo.

The land department not having determined this question of priority, and the ambiguity existing by reason of the double grant of the conflict area appearing on the face of the patent itself, it was eminently proper for the trial court to allow the whole question of priority to be opened up and determined as we have already indicated.

The Gold Leaf was not called on to adverse the Sunnysides-Gazabo patent application, and its failure to adverse does not preclude it from contesting extralateral rights. (*U. S. M. Co.* v. *Lawson,* 207 U. S. 1, 19.)

It is to be noted that the land department no longer permits a deputy surveyor to make any exclusions of acreage, but requires him to give the total area of each claim and the area of each conflict. Any exclusions of conflict areas must be made by the applicant for patent. The department has thus expressly disapproved of allowing a deputy surveyor to act in relation to matters which are beyond his jurisdiction. That the land department paid no attention to this portion of the surveyor's report and considered it immaterial, is conclusively established by the fact that the patent, which is the department's final adjudication of the patent application proceedings, makes no exclusions whatsoever.

The Los Gazabo location was void because included within the prior valid subsisting Sunnyside locations. It is elementary that if the Sunnyside locations were valid, the Los Gazabo was embraced almost entirely within these other locations. The Los Gazabo location monument, discovery point, and discovery shaft were all on ground already appropriated by the Sunnysides. (*Belk* v. *Meagher,* 104 U. S. 279; *Farrell* v. *Lockhart,* 210 U. S. 142; *Gwillim* v. *Donnellan,* 115 U. S. 45.)

*In Reply to Petition for Rehearing:* The general rule announced by appellant and supported by the authorities cited is undoubtedly correct—that when field notes are referred to in an instrument of conveyance they become a part of the description of the patent.

The surveyor's function is to run lines, establish corners and boundaries, and compute areas, but there his function ceases. These matters are properly within his sphere of duty. But he cannot constitute himself a tribunal and assume judicial functions and determine questions which are clearly outside of his line of duty and which he is not authorized to do. Whenever he does this his survey and report on such points are to be ignored. (Story, J., in *Ellicott* v. *Pearl,* 10 Pet. 412; *Jackson* v. *Witter,* 2 Johns. 180; *Salmon* v. *Rance,* 3 S. & R. 311; *Eberle* v. *Board,* 11 Mo. 247; *Kenyon* v. *Nichols,* 1 R. I. 411; *Bodley* v. *Hernden,* 10 Ky. 22; 8 Copp's Land Owner, 104.)

The instructions to surveyors in force at the time this survey was made and the mining regulations of the land department (par. 38) both clearly indicate that the surveyor should leave the determination of questions of exclusions to the applicant, whose duty it is to state in his application for patent "the portions to be excluded in express terms."

Appellant's counsel contends that this may have been done for all that appears in the record. The answer to this is that the patent, the final adjudication of the matter by the land department, contains no such exclusion. This fact gives rise to the conclusive presumption that no such exclusion was contained in either the patent application or notices.

The field notes themselves contain a statement of the surveyor that the Sunnysides were located February 20, 1906, and the Los Gazabo on March 3, 1906. The field notes were not admissible for the purpose for which they were offered and if admitted they would have established the priority of the Sunnysides over the Los Gazabo.

Appellant cites certain provisions of the "Manual of Instructions," issued by the department of the interior to surveyors, regarding conflict areas, and would give the *ex parte* statements of the surveyors regarding such matters controlling and conclusive effect, even though such *ex parte* statements, which must of necessity be based on

hearsay or self-serving evidence, are opposed to the actual facts of the case. We do not feel that the department intended anything more than to direct the surveyor to report such matters to the best of his information, and that the department would give such report the weight it was entitled to in view of all the facts. For such a report of the surveyor, made after a hasty examination in the field and based upon incomplete evidence, to have the effect of a conclusive and incontrovertible finding on such a matter would be contrary to all ideas of correctly ascertaining truth and fact. It would mean to give greater weight to inexact and necessarily incomplete methods of ascertaining the truth and make them prevail over the methods provided by judicial forums. If a surveyor's report on facts not within his knowledge can be given the effect contended for by respondent, it would mean that a surveyor could do what Judge Story has declared is not the law, *i. e.*, he could make "evidence as between third parties." That "a ministerial officer should usurp the province of the courts and determine questions whose sole cognizance belongs to them" was never intended by Congress.

We cannot come to any other logical conclusion than that such statements by a surveyor contained in his field notes are intended as merely advisory to the land department in the performance of its functions, and bind no one. Those statements are to be given merely the weight that they logically deserve, as *ex parte* statements solely, made without adequate data on which to base a just and final determination, and are made usually on the self-serving statements of the claimant of the property.

The case before this court is a clear illustration of the injustice which would result were the rule contended for by appellant the correct one. Here are the Sunnyside locations, demonstrated by the evidence to be prior to the Los Gazabo in point of time, and repeatedly in sworn declarations of appellant so declared to be prior, and yet in the face of this established fact appellant asks this court to brush all this positive evidence aside and accept

the *ex parte* statement of the surveyor to the contrary, made solely because he was told to make it by appellant's attorney.

However, assuming for purposes of argument that appellant's contention is correct and that the Sunnysides-Los Gazabo field notes were properly admissible in evidence, they fail to establish appellant's contention. The surveyor himself in those same field notes makes the positive statement that the Sunnyside claims were located February 20, 1906, and the Los Gazabo claim on March 3 of the same year.

As a matter of fact the surveyor does not positively state that the conflict area is to be excluded from the Sunnysides in favor of the Los Gazabo, but merely gives certain calculations and net areas, from which it might be inferred that he intended that such a conclusion should follow.

Any statements made by the surveyor in the field notes were not binding on the land department and, at most, such statements would be regarded by the department as merely suggestive and to be considered in the light of all the other surrounding circumstances.

The very fact that the department did not adjudicate this question of priority and incorporate such adjudication in the patent which is, in a measure, its final judgment, being the culmination of the patent proceedings, is one of the most convincing and powerful arguments that the land department refused to accept such *ex parte* statements of the surveyor as to priority, because of the direct and positive evidence to the contrary contained in those same field notes.

Any requirement in any of its regulations regarding conflict areas was placed there for the purpose of securing information for its own use in passing on the patent application, and to contend that the department is bound by such *ex parte* and necessarily incomplete evidence furnished in such cases by surveyors is to strain all our concepts of logic and reason. Here the department saw fit to ignore the manifestly misleading calculations of the surveyor which might be taken to indicate priority, and

omitted any adjudication of the matter from its patent. In its second point appellant declares that the court erred in considering the fact that appellant made no exclusion of the conflict area in either its verified application for patent, the published notice, or in its final application to purchase.

If such evidence was in existence it was incumbent on plaintiff to produce it to explain away the ambiguity. Not having produced it, the presumption would be that such favorable evidence did not exist, and that the formal application for patent, etc., did not contain such exclusion, or it would have been produced. (Wigmore on Evidence, sec. 284.)

Appellant, by juggling with the areas of the individual claims and with the total area, and by calculation based on courses and distances contained in the patent, claims that the net areas of the Sunnysides, after excluding the Los Gazabo conflict, can be determined from the patent itself. The complete answer to all this is that by similar calculation, and for that matter a much simpler process, exactly the opposite result can be obtained.

The statement is made in the answer that patents to groups of mining claims now issued by the land department do not contain specific exclusions of conflict areas occurring between claims embraced in the same group patent. How does this alter the rule that we are discussing? It only means that the land department leaves the adjudication of priorities for the courts to determine in each instance whenever the question assumes importance. This question would only become important for the courts to determine, however, when the same claimant has covered the same segment of apex with two conflicting locations, and has endeavored to shift priorities to the disadvantage of adjoining owners, as in this case.

Appellant says nothing about the positive statement of the surveyor in these same field notes that the Sunnyside locations were prior in point of time to the Los Gazabo. Appellant would have this court adopt only those portions of the surveyor's notes which are favorable to its case, and reject those that support the real facts.

*McIntosh & Cooke,* for Respondents, in reply to the petition for rehearing:

The regulations in force since 1897 and at the time the survey of the Sunnyside group was made read as follows: "The applicant for patent should state the portions to be excluded in express terms."

Appellant, by failing to produce or offer its application for patent, has admitted that no such exclusion was made therein. The unmistakable purpose in the clause is to give notice to parties affected, and we submit that a surface conflict is not the only method whereby a party may be affected. Hence, the reason of the rule requiring application for patent to state exclusion in express terms is just as applicable, just as necessary to a cause such as the one at bar, where no surface conflict exists. Whether the thing that takes away or destroys our property is by surface conflict or by extralateral projection is of no importance; the reason for giving the notice of the proceeding leading to such result is as apparent and as compelling in the one case as in the other.

Again, if the surveyor may make exclusion by a secret order from applicant by the mere statement in his field notes in case of conflict among claims in a group survey, why should not the same proceeding apply to exclusion of hostile surface conflict? Why give the hostile surface conflict claimant notice and no notice to hostile underground conflict claimant? When it is remembered that a vein with its underground ramifications is the principal subject of a mineral grant, and the surface a mere incident in practical effect, it must be admitted that the underground conflict and persons affected extralaterally are immeasurably more important and hence more entitled to notice, protection, etc., than are mere surface conflict claimants.

*Per Curiam:*

This is an appeal from a judgment in favor of the respondents in an action to quiet title in the plaintiff, appellant herein, to the Los Gazabo lode mining claim.

The Round Mountain Red Top Mining Company and John F. Davidson, defendants in the court below, are not affected by the questions raised by the appeal in this case. The complaint, among other matters, alleges: "That, under and by virtue of a patent from the United States therefor, the plaintiff is the owner, and for a long time past has been and now is in the possession and entitled to the possession of the Los Gazabo lode. mining claim and location, Survey No. 2,815, in said Round Mountain or Jefferson mining district; and said Los Gazabo location has parallel end lines; and it is described by metes and bounds as follows: [Here follows the description.] That said Los Gazabo lode or vein so far departs from a perpendicular on its dip and on its downward course into the earth, and within vertical planes drawn downward through the end lines of said Los Gazabo location, so continued in their own direction, as that it extends outside of the vertical side lines of said Los Gazabo location on the surface, and into, through, and across the underground portion of certain lands claimed by the defendants as being the Gold Leaf and the Black Hawk so-called lode mining locations, and as being the property of the defendants."

The defendant, the Round Mountain Sphinx Mining Company, respondent herein, in its amended answer denied the validity of the said Los Gazabo lode mining claim, and alleged that said Los Gazabo claim was located entirely within the surface boundaries of certain prior existing mining claims known as and called the Sunnyside No. 1, Sunnyside No. 2, Sunnyside Fraction, and Sunnyside No. 3 lode mining claims. And as a further answer defendant alleged: "That it is the owner of, possessed of, and entitled to, the possession of that certain lode mining claim called the Gold Leaf lode, situate in the Round Mountain or Jefferson mining district, county of Nye, State of Nevada, and more particularly described as follows: [Here follows description of claim.] That within the exterior boundaries of

said Gold Leaf claim there is disclosed in the discovery
a lode, vein, or ledge, * * * the general course or
strike of the top or apex of which is northerly and
southerly, said lode, vein, or ledge entering the south-
erly end line and running parallel to the side line thereof,
passing out of the northerly end line of said claim; that
said Gold Leaf lode, vein, or ledge on its dip from the
apex extends to, beneath, and beyond the northeasterly
side line of said claim, and the defendant Round Moun-
tain Sphinx Mining Company is the owner of said vein

within vertical planes drawn downward through the end lines of said claim extended in their own direction indefinitely, and includes the vein claimed by plaintiff as the pretended Los Gazabo veins.''

The diagram (see p. 414) shows the relative locations of the Sunnyside claims, the Los Gazabo claim, and the Gold Leaf claim, the ledge and its dip, and the ledge on its dip in controversy.

At the trial, plaintiff introduced a patent issued by the United States as evidence of its ownership of the Los Gazabo mining claim. This patent was a group patent of the Sunnysides and Los Gazabo claims, and on its face the description of the Los Gazabo claim is in conflict with Sunnysides Nos. 1, 2, 3, and Sunnyside Fraction location; all these claims being described in and the patent purporting to grant them all as described by metes and bounds. Only a minute portion of the Los Gazabo location projects beyond and is free from conflict with the other locations. No portion of the apex of the lode in controversy is situated in this nonconflicting area. It is the contention of the respondent, and the lower court so held, that, in view of this conflict appearing on the face of the patent itself, the patent was ambiguous, and it was competent to go behind the patent and determine the question of priority between the Los Gazabo and the Sunnyside claims described by the patent. The respondents contended, and the trial court so held, that the Sunnysides were entitled to priority over the Los Gazabo, thus rendering the Los Gazabo invalid as far as it conflicted with the Sunnysides. Outside of certain legal questions involved, the main question of fact was as to the priority of locations of the Sunnysides as against the Los Gazabo claim.

[1] As repeatedly held by this court, findings of the lower court upon conflicting evidence are binding upon this court. This case appears to have been tried with great care by the lower court, and, after a careful examination of the record and the briefs of counsel, we are satisfied that the trial court arrived at a correct conclusion. The opinion filed in the case by Judge Stevens

covers the case so fully that this court has adopted the greater portion thereof as the opinion of this court. From the opinion rendered by the trial judge, we quote with approval the following:

"The Gold Leaf claim did not file an adverse to the application for patent, made by the plaintiff, for the Sunnyside and Los Gazabo claims, and the patent for said claims therefore includes so much of the surface ground of the Gold Leaf as conflicted with the Sunnysides and Los Gazabo, and there is no controversy in this action respecting the surface rights of the respective parties, and, the defendant Round Mountain Sphinx Company having dismissed its counterclaim for damages alleged in its separate answer, the only issue to be determined is as to the extralateral rights acquired by the plaintiff by its patent to the Los Gazabo claim. The evidence clearly shows that the lode or vein, known as the Los Gazabo, and which has its apex within the surface lines of the Los Gazabo or Sunnyside claims, on its dip beneath the surface, extends toward and through the Gold Leaf and Black Hawk claims, and that the plaintiff, in prosecuting the development on the Los Gazabo, has entered into the Gold Leaf and Black Hawk claims, and has extracted and removed a large amount of ore therefrom.

[2] "The evidence further shows that the lode or vein, known as the Los Gazabo lode, is a cross vein of the Sunnyside claims, and that, in prosecuting the development of said lode, the plaintiff has departed from the westerly side line of Sunnyside No. 1, which would constitute the westerly end line of the claim in determining the extralateral rights of the plaintiff, and, if the Los Gazabo location should be held invalid, the side lines of the Sunnyside claims would become the end lines, across which, as they extend downward vertically, the plaintiff cannot follow the vein, and could not enter upon or into the premises in dispute, which are shown to be outside of vertical planes drawn downward through those lines. (*Flagstaff M. Co. v. Tarbet,* 98 U. S. 463, 25 L. Ed. 253; *Wolfley* v. *Lebanon M. Co.,* 4 Colo. 112.)

[3] "The record shows that the Los Gazabo location was a junior location, and the location certificate filed by Scott, *et al.,* the locators of said claim, and introduced in evidence by the plaintiff, recites that the claim 'is wholly within the boundaries claimed by Sunnyside Nos. 1, 2, and 3.' This declaration of itself is sufficient to cast the burden upon the locators to show that the Sunnyside claims were invalid. The mining acts of Congress authorize location of mining claims upon the unoccupied and unappropriated mineral lands of the United States. Nowhere in the recitals contained in the original location certificate of the Los Gazabo does it appear that the land in question was of a character which the law authorizes a location upon. * * * If the Sunnyside claims were valid and existing locations at the time the Los Gazabo was located, it is clear that the latter location was void. (*Belk* v. *Meagher,* 104 U. S. 284, 26 L. Ed. 735; *Reynolds* v. *Pasco,* 24 Utah, 219, 66 Pac. 1064; *Armstrong* v. *Lower,* 6 Colo. 393.)

"I think the proof is clear that the Sunnyside locations Nos. 1, 2, and 3 were made on the 20th day of February, 1906. The location and amended location certificates of the several claims show that all the acts necessary to constitute valid locations were performed by the locators and within the time required by law. The amended and additional location certificates filed by the plaintiff company allege the date of the discovery to be on the 20th day of February, 1906. The evidence of McDonald shows that the monuments were erected and the discovery shafts on these claims sunk within the prescribed limit. (Page 273, Transcript of Evidence.)

[4] "Counsel for plaintiff contends that as the law does not make the location certificate *prima facie* evidence of discovery, that such a declaration is not binding upon the plaintiff; but I am of the opinion that, while it might not be sufficient evidence as against the defendants, the declarations contained in the record by which the patent was obtained is some evidence that can be considered in the absence of proof that the record does not state the truth. If more were needed, I think the

evidence of the president of the plaintiff company, James R. Davis, is conclusive upon this point.

[5] "I can reach no other conclusion but that on the 3d day of March, 1906, the date of location of the Los Gazabo claim, the Sunnysides Nos. 1, 2, and 3 were valid existing locations, and that the location of the Los Gazabo was based upon a discovery of mineral within the limits of the Sunnyside claims, and was therefore void. (*Belk* v. *Meagher, supra,* 104 U. S. 284, 26 L. Ed. 735; *Reynolds* v. *Pasco,* 24 Utah, 219, 66 Pac. 1064; *Tuolumne Con. Co.* v. *Maier,* 134 Cal. 583, 66 Pac. 863; *Golden Terra Co.* v. *Mahler,* 4 Morr. Min. Rep. 390, 2 Dak. 377, 11 N. W. 98; *Armstrong* v. *Lower, supra,* 6 Colo. 393.)

[6] "Counsel for plaintiff contends, however, that a patent, having been issued to the plaintiff by the land department, is a conveyance of the legal title to the patentee after the matter has been adjudicated by the proper tribunal, and like other judgments is impervious to collateral attack, and I think this contention is correct so far as the adjudication of any matters which were before the tribunal for adjudication and as against all persons who were parties to the adjudication. I am satisfied that the defendants would be estopped to deny the validity of the patent so far as the Sunnyside claims are concerned, and defendants do not question its validity with reference to the surface ground within the boundaries of those claims, nor any extralateral rights which accrue to plaintiff by virtue of the patent to the Sunnyside claims.

"As the Gold Leaf failed to file an adverse to the application of plaintiff for patent, the adjudication of the land department is conclusive as to the rights of the parties to the surface ground included in the application, but the validity of the Los Gazabo claim was not before the department, and could not be questioned by the Gold Leaf in that proceeding. There was nothing at that time to show that the plaintiff was attempting to acquire any rights which could conflict with the rights of the defendants.

[7, 8] "The government had a right to convey the land included within the surface boundaries of the Sunnyside locations, as the Sunnyside claims, which had been regularly and legally segregated from occupancy or appropriation by another, and, the Los Gazabo being wholly located within the boundaries of claims already segregated being void, the government had no further rights to convey by the Los Gazabo patent. (*Rose* v. *Richmond M. Co.*, 17 Nev. 26; *South End Mining Co.* v. *Tinney*, 22 Nev. 19.)

[9] "Again, this is an equitable action to quiet the title to the Los Gazabo lode or vein, which involves the question of extralateral rights which were not involved in the proceedings for patent, and the defendants are not estopped from questioning the validity of the location of the claim under which the plaintiff seeks to enforce such extralateral rights as against them. (*United States M. Co.* v. *Lawson*, 134 Fed. 769, 67 C. C. A. 587; *Lawson* v. *United States M. Co.*, 207 U. S. 1, 28 Sup. Ct. 15, 52 L. Ed. 65; *Bunker Hill M. Co.* v. *Empire State M. Co.*, 108 Fed. 189.)

[10] "The validity of such patent may be pleaded as a defense in any action, and may be tried upon the same principles as an original bill in equity. (*South End M. Co.* v. *Tinney*, 22 Nev. 19; *Rose* v. *Richmond*, 17 Nev. 26.)

"To sustain its contention in this case, the plaintiff cites the case of *Tonopah and Salt Lake Mining Co.* v. *Tonopah Mining Co.*, 125 Fed. 408 (decided by Judge Hawley), but the facts in that case are entirely different from the facts in this case. In the case cited it clearly appears that a discovery of mineral was made by the junior location entirely outside of the boundaries of the senior location. In this case the contention is not and cannot be made that any discovery of mineral was made outside of the boundaries of the Sunnyside claims.

"Judge Hawley, in his decision in the case cited, used the following language: 'Conceding, as we have throughout this case, that the location of a mining claim, based exclusively on a discovery of mineral within the limits of another existing and valid location, is void.'

He also quotes the language of the Supreme Court of the United States in the case of *Gwillim* v. *Donnellan,* 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348, as follows: 'That the location as made by the locator must be one which entitles him to possession as against the United States, as well as against another claimant, if it is not valid as against the other.   The location is the plaintiff's title.   If good, he can recover.   If bad, he must be defeated.   A location on account of the discovery of a vein or lóde can be made by a discoverer, or one who claims under it.   The discovered lode must lie within the limits of the location which is made by reason of it.   If the title to the discovery fails, so must the location which rests upon it.'

"I cannot find that any of the authorities cited sustain the location of the so-called Los Gazabo lode, and I can reach no other conclusion than that such location was void, and that the patent, issued by the land department, could give such location no legal vitality. * * * Having found, as a matter of fact, that the patent to the so-called Los Gazabo is invalid for any purpose, as a conclusion of law, the court finds that the plaintiff should take nothing by its suit, and that the defendants should have judgment for their costs herein expended."

That the government cannot convey the same tract of land twice has been too frequently decided to require citation of authorities.   It cannot convey conflicting areas of mining claims to two parties, for in such case one of the grants must of necessity be void.   It follows as a necessary sequence that, where the government issues a patent to a group of mining claims purporting to grant the same surface to different claims constituting the group, all the several grants cannot be valid, so far as the conflicting area is concerned.   So far as the surface conveyed by the group patent is concerned, it makes no difference, but when it comes to extralateral rights, as in this case, it becomes of the greatest importance which particular grant carries the surface including the apex.

[11] It may be conceded that the land department has jurisdiction to determine the question of priority as between conflicting lode locations embraced in the same group application, but in the case of the Sunnyside-Los Gazabo application it failed to exercise such jurisdiction. The patent under consideration contains no exclusion of conflict area from one claim in favor of another. Neither in the verified application for patent, the published notice, nor its final application to purchase, did the appellant make any exclusion in favor of the Los Gazabo. It applied for and received a patent to these conflicting claims which made no mention of the conflict.

[12] The field notes made by appellant's surveyors contained such an exclusion, made upon the direction of appellant's attorney. Appellant offered these notes in evidence, and error is assigned in their exclusion. We think no prejudicial error could have thus been committed, for the exclusion in the notes, under the circumstances, was a self-serving act by an agent of the plaintiff which could not be binding on respondent. While these surveyor's field notes were before the land department, there was also the sworn statement contained in the application for patent that the Sunnyside locations were prior to the Los Gazabo.

[13] It is manifest that the land department did not determine the question of priority, but made a double grant of the conflicting area. This appearing upon the face of the patent, the question of priority was a matter which the trial court had power to consider and determine. This was not a collateral attack upon the patent, but a determination of the effect of a patent containing ambiguous provisions. As appellant was relying on the patent as a valid grant of the Los Gazabo location, the patent on its face being ambiguous in that it did not show a priority of location in favor of any of the claims granted by the patent and which covered the conflicting area, the burden of proof was upon the appellant to explain the ambiguity and establish the priority of the Los Gazabo location.

The contention that the defendant Round Mountain Sphinx Mining Company, as owner of the Gold Leaf claim, not having filed an adverse claim to plaintiff's application for patent, it is now precluded from questioning its validity, is, we think, without merit. It cannot, of course, question the validity of the surface conveyed, but as the patent contains grants of distinct mining claims described by metes and bounds, in conflict with each other, and controlling extralateral rights in different directions, it can insist on a determination to which particular claims the apex of the ledge belongs as controlling the extralateral rights.

The judgment is affirmed.

———

NOTE—At the time of printing this volume petition for rehearing the foregoing case is pending.